The STATE of Ohio

v.

WEILAND.█

2004-Ohio-2240.]

Licking County Municipal Court.

No. 03TRC14319.

Decided April 19, 2004.

Christian D. Roland, for the state.

Robert E. Calesaric, for the defendant.

---

W. David Branstool, Judge.

{¶ 1} Defendant Janice Weiland is charged with operating a vehicle while under the influence of alcohol and failure to maintain reasonable control of her vehicle. The matter is before the court on the defendant's motion to suppress evidence. For the reasons set forth below, the defendant's motion to suppress is denied in part and granted in part.

## I. Facts

{¶ 2} Shortly after 2:00 a.m. on October 23, 2003, Deputy Randy Morton of the Licking County Sheriff's Office received a call from his dispatcher advising him to respond to a single-car accident on State Route 13 south of Utica, Ohio. When he arrived at the accident, he observed a wrecked black Chevrolet Blazer off to the side of the road. It appeared that the driver had lost control of the vehicle and skidded off the road, where it rolled several times. Emergency medical personnel were already at the scene when Deputy Morton arrived.

{¶ 3} Soon after he arrived, he spoke with Janice Weiland, the driver of the vehicle. Deputy Morton immediately noticed a moderate odor of alcohol coming from Weiland. As a result of this observation, and because the defendant had been involved in a single-car accident, Deputy Morton suspected that the defendant might be under the influence of alcohol, and he requested that she submit to standardized field sobriety tests ("SFST").[1]

---

1. {¶ a} The state laid the following foundation with respect to Dep. Morton's training and experience in investigating alcohol-related offenses and his certification in performing standardized field sobriety tests.

{¶ b} "Q. Sir what is your occupation?

{¶ c} "A. Deputy Sheriff for the Licking County Sheriff's Department.

{¶ d} "Q. How long have you been so employed?

{¶ e} "A. Uh ... approximately 17 years.

{¶ f} "Q. And ... uh ... during the time of your employment and prior to your employment did you receive any training?

{¶ g} "A. I have.

{¶ h} "Q. Was it all the normal training for somebody to become a sheriff or police officer?

{¶ i} "A. Yes it was. It was a police officer's training through the academy and I also have a two year associates degree in criminal justice.

{¶ j} "Q. Have you also had ongoing training?

{¶ k} "A. Yes I have.

{¶ l} "Q. Does that training that is ongoing training and your initial training then, include ... uh ... the testing investigations of alcohol related offenses?

{¶ 4} Deputy Morton testified that he first performed the horizontal gaze nystagmus test. He testified that he observed four out of six clues while conducting this test. Specifically, he observed that the defendant's eyes lacked smooth pursuit and exhibited distinct nystagmus at maximum deviation in each eye. He did not observe any nystagmus prior to the onset of 45 degrees.

{¶ 5} Deputy Morton next conducted the walk-and-turn test. He testified that the defendant raised her arm six inches to balance throughout the test and failed to maintain contact between her heel and toes on each step. Further, he testified that on two occasions she stumbled while performing the test. Finally, he testified that she incorrectly performed the turn because she performed it in a "military style" rather than as he instructed her.

{¶ 6} Last, Deputy Morton asked the defendant to perform the one-leg-stand test. He testified that the defendant continued to raise her arms at least six inches to balance during the test and that she failed even to raise her foot off the ground, as instructed. He gave the defendant a second opportunity to take this test after allowing her to remove her shoes. She still did not lift her foot off the ground when she attempted to perform this test. During the administration of these tests, Deputy Morton testified that the defendant admitted to him that she had consumed alcohol.

{¶ 7} As a result of Deputy Morton's observations both with respect to the traffic accident, as well as the defendant's performance on the field sobriety tests, he placed the defendant under arrest and transported her to the Utica Police Department, where he requested that she provide a breath sample. The defendant refused to comply with this request.

## II. Analysis

{¶ 8} The defendant challenges the admissibility of all evidence concerning the defendant's performance on the field sobriety tests. The defendant argues that this evidence is not admissible because the arresting officer did not strictly comply with the standardized testing procedures adopted by the National Highway Traffic Safety Administration ("NHTSA") and, as a result, this evidence must be suppressed in accordance with Ohio Supreme Court's decision in State v. Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952. Additionally, the defendant argues that the General Assembly's recent enactment of S.B. No. 163 to legisla-

---

{¶ m} " A. Yes.

{¶ n} "Q. The training that you had was it done in accordance with standardized ... um ... methods of ... um ... investigation of alcohol related offenses?

{¶ o} "A. Through the basic ADAP class through the highway safety program and ... uh ... I have also been through the instructive classes and am a certified instructor in the field sobriety testing for two years."

tively overrule the *Homan* decision is unconstitutional because it violates the separation of powers doctrine and Section 5(B), Article IV of the Ohio Constitution. Finally, the defendant argues that if the state fails to show proper compliance with standardized testing procedures, then the SFST evidence may not be considered to determine whether the officer had probable cause to arrest the defendant and the impaired driving charge must necessarily be dismissed.

{¶ 9} As a threshold matter, the court is forced to resolve the constitutional challenge to S.B. No. 163. The defendant maintains that the "strict compliance" standard adopted by the Supreme Court in *State v. Homan* still governs the admissibility SFST evidence. Conversely, the state asserts that the lower standard of "substantial compliance" adopted by S.B. No. 163 now controls.

## A. State v. Homan

{¶ 10} In *State v. Homan,* the Ohio Supreme Court held that in order for the results of field sobriety tests to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with the standardized testing procedures developed by the National Highway Traffic Safety Administration ("NHTSA"). Under *Homan,* if the state could not establish strict compliance with the standardized procedures adopted by NHTSA, evidence of the suspect's performance on these tests was rendered inadmissible.

{¶ 11} In reaching this decision, the court was particularly concerned about the reliability of this type of evidence. The court concluded that evidence of field sobriety tests must be reliable in order to be admissible. The court stated:
"[W]hen field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable. * * * The NHTSA concluded that field sobriety tests are an effective means of detecting legal intoxication 'only when: the tests are administered in the prescribed, standardized manner[,] * * * the standardized clues are used to assess the suspect's performance[, and] * * * the standardized criteria are employed to interpret that performance.' * * * According to the NHTSA, 'if any one of the standardized field sobriety test elements is changed, the validity is compromised.' " (Citations omitted.)

{¶ 12} The court also stressed the importance of the reliability of the testing process as a critical component of the court's earlier decision in *State v. Bresson* (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330. In *Bresson,* the court held that a police officer could testify at trial concerning a suspect's performance on the horizontal gaze nystagmus test, provided the officer was properly trained and proficient and the test was properly performed. The *Homan* court stated:
" 'In holding that such testimony is admissible, we stressed the importance of the testing process. We noted that the arresting officer's knowledge of the

test, his training, and his ability to interpret his observations are key considerations in determining admissibility.' Id., 51 Ohio St.3d at 129, 554 N.E.2d 1330." *Homan,* 89 Ohio St.3d at 425, 732 N.E.2d 952.

{¶ 13} *Homan* was a landmark decision. It changed the evidentiary framework for virtually every impaired driving case in the state of Ohio. Regardless of whether *Homan* was correctly decided, trial courts and law enforcement agencies found the court's decision difficult to interpret and impractical to apply. Courts were split, for example, over whether *Homan* precluded, at trial, evidence of field sobriety tests that did not strictly comply with standardized procedures.[2] Courts were also divided over what prosecution would be required to prove in order to establish a foundation for compliance with NHTSA. See, e.g., *State v. Nickelson* (July 20, 2001), Huron App. No. 00–036, 2001 WL 1028878; *State v. Ryan* (May 29, 2003) Licking App. No. 02 CA 00095, 2003 WL 21255939. As a result, the Ohio General Assembly sought to clarify the issue.

## B. Senate Bill No. 163

{¶ 14} In response to the *Homan* decision, the General Assembly passed S.B. No. 163, which legislatively overruled the *Homan* decision by adopting a "substantial compliance" standard for the admissibility of SFST evidence. The law became effective on April 9, 2003.

{¶ 15} Senate Bill No. 163 amended R.C. 4511.19 to include the following language:

"(D)(4)(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

---

2. This question was recently settled by the Supreme Court when it decided *State v. Schmitt,* 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446. *Schmitt* extended *Homan* to preclude evidence of improperly administered field sobriety tests at trial, as well.

"(i) The officer may testify concerning the results of the field sobriety test so administered.

"(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceeding in the criminal prosecution or juvenile court proceedings.

"(iii) If testimony is presented or evidence is introduced under Division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever the weight the trier of fact considers to be appropriate."

{¶ 16} By enacting S.B. No. 163, the legislature rejected the strict-compliance standard adopted by *Homan* in favor of a substantial-compliance standard. There is simply no other way to interpret this statute.[3] The challenge raised by the defendant, however, is whether S.B. No. 163 violates Section 5(B), Article IV of the Ohio Constitution, which grants exclusive rule-making authority on procedural matters to the Ohio Supreme Court, not the legislature.

## C.  *Section 5(B), Article IV of the Ohio Constitution*

{¶ 17} Section 5(B), Article IV of the Ohio Constitution states as follows:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge or modify any substantive right.  [The court, shall file] [p]roposed rules * * * not later than the 15th day of January, with the clerk of each house of the General Assembly during the regular session thereof, and amendments to any such proposed rules may be so filed not later than the 1st day of May in that session.  Such rules shall take effect on the following 1st day of July, unless prior to such day the General Assembly adopts a concurrent resolution of disapproval.  All laws in conflict with such rules shall be at no further force or effect after such rules have taken effect."

{¶ 18} This provision was adopted by Ohio voters as part of the Modern Courts Amendment of 1968.  It granted the Supreme Court authority to prescribe rules governing practice and procedure in all courts in the state.  The defendant argues that S.B. No. 163 conflicts with the evidentiary rule adopted in *Homan*, and, therefore, is nullified by Section 5(B), Article IV.  Conversely, the state

---

**3.**  This seems clear even though the last sentence of S.B. No. 163 is confusing.  That provision seems to suggest that evidence of substantial compliance is admissible only if the introduction of such evidence is allowable under the Rules of Evidence.  This is confusing because, in the court's view, the only way to interpret *Homan* is to conclude that the court's holding was based on its interpretation of the pertinent Rules of Evidence.  If so, then this provision would render the entire enactment meaningless.

argues that S.B. No. 163 is a valid exercise of legislative authority and that the Supreme Court has, at least implicitly, recognized the constitutionality of S.B. No. 163.[4]

{¶ 19} The Ohio Supreme Court has been forced to resolve conflicts between statutes passed by the General Assembly and procedural rules adopted by the Supreme Court under the authority of Section 5(B), Article IV on many occasions. On these occasions, the court has vigorously defended its rule-making authority against legislative intrusion. In the court's view, three recent decisions, in particular, control the resolution of the issue now before this court.

{¶ 20} In *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789, the court invalidated a subsequently enacted statute that contradicted a Rule of Civil Procedure promulgated pursuant to Section 5(B), Article IV. This decision is significant because it settled the question of whether subsequently enacted statutes—as opposed to those already in effect at the time the amendment was adopted—would control over a previously adopted procedural rule. Thus, the Supreme Court made it clear that its procedural rules, once properly adopted, as well as the decisions that interpreted them, are not subject to legislative rejection. The court held at paragraph two of the syllabus:

> "The Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern procedural matters."

{¶ 21} In *In re Coy* (1993), 67 Ohio St.3d 215, 616 N.E.2d 1105, the court resolved a conflict between Evid.R. 807 and a statute that purported to govern the admissibility of statements made by child abuse victims. Relying on Section 5(B), Article IV, the court held that a statute establishing the admissibility of otherwise inadmissible hearsay statements by child abuse victims was inconsistent with the Rules of Evidence, and, therefore, had no effect under Section 5(B), Article IV of the Constitution. The court stated:

---

4. This argument is based on dicta in the court's recent opinion in *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446. The pertinent portion of that opinion reads as follows: "Since our decision in *Homan*, the General Assembly has amended R.C. 4511.19. Under the amended statute, the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible. * * * Consequently we recognize that this portion of our decision will have limited applicability." *Schmitt* at ¶ 9. While this language may suggest the court's view on the matter, it is important to recognize that it was not essential to the court's holding. In addition, the constitutional issue at stake here is too important to be decided on the basis of mere dicta. Moreover, even if the court were ultimately to take this position, the issue should only be resolved after a proper evaluation of the constitutional issue involved and an assessment of the court's precedent on this matter.

"While we have great respect for the General Assembly and give great deference to its enactments, such treatment cannot be accorded to R.C. 2151.35(F). The statute is either one of two things—it is meaningless because the matter is already covered in Article VIII of the Evidence Rules, or it is unconstitutional as it attempts to change (enlarge) the Evidence Rules as promulgated by this court. * * * Given the foregoing, R.C. 2151.35(F) is inconsistent with Article VIII of the Ohio Rules of Evidence and, as such, has no force or effect." *In re Coy,* 67 Ohio St.3d at 219, 616 N.E.2d 1105.

{¶ 22} Likewise in *State ex rel. Silcott v. Spahr* (1990), 50 Ohio St.3d 110, 552 N.E.2d 926, the court invalidated two statutes that conflicted with App.R. 8(A) and Crim.R. 46. Once again, the court based its decision on Section 5(B), Article IV of the Ohio Constitution.

{¶ 23} Most recently, and perhaps most forcefully, the court reaffirmed its resolve against legislative attempts to encroach upon its rule-making authority over procedural matters in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. In that case, the court struck down Am.Sub.H.B. No. 350, the legislature's then-recent attempt at tort reform, as a wholesale violation of the separation-of-powers doctrine. In addition to violating the separation of powers, the court also held that portions of H.B. No. 350 violated Section 5(B), Article IV of the Ohio Constitution. Id. at 478–479, 715 N.E.2d 1062. The court's defense of the judicial branch was vigorous. The court stated:

"Am.Sub.H.B. 350 intrudes upon the judicial power by declaring itself constitutional, by reenacting legislation struck down as unconstitutional, and by interfering with this court's power to regulate court procedure." (Emphasis added.) Id. at 462, 715 N.E.2d 1062.

### D. Senate Bill No. 163 Violates Section 5(B), Article IV of the Ohio Constitution

{¶ 24} There is no doubt that Senate Bill No. 163 conflicts with and seeks to alter the Supreme Court's evidentiary ruling in *State v. Homan.* Nor is there any doubt that Senate Bill No. 163 alters the court's interpretation of existing Rules of Evidence. The plain language of the statute governs the admissibility of evidence concerning standardized field sobriety tests in impaired driving cases.

{¶ 25} Although the *Homan* decision does not cite any specific Rule of Evidence, it is clear that the court's decision was based on an implicit interpretation of Rule 702 of the Ohio Rules of Evidence. Evid.R. 702 governs the admissibility of expert testimony, and it makes it clear that expert testimony must be reliable in order to be admissible. Indeed, the basis for the court's rejecting evidence of field sobriety tests that were not done in strict compliance

with standardized procedures was that such evidence was not reliable.[5] The court acknowledged as much when it stated in *Homan* :

> "[E]xperts in the areas of drunk driving apprehension, prosecution, and defense all appear to agree that the reliability of field sobriety test results does indeed turn upon the degree to which police comply with standardized testing procedures." *Homan*, 89 Ohio St.3d at 425, 732 N.E.2d 952.

■ {¶ 26} Under the Ohio Constitution, only the Supreme Court has the power to promulgate the Rules of Evidence. The legislature has some power to veto proposed changes by adopting a concurrent resolution, but the legislature has no authority to establish new Rules of Evidence on its own. The adopting of S.B. No. 163 was just such an attempt. In *In re Coy*, supra, the court rejected a similar attempt. The court emphasized that "[l]ike the Ohio Rules of Civil Procedure, the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State ex rel. Ohio Academy of Trial Lawyers*, 86 Ohio St.3d at 491, 715 N.E.2d 1062.

{¶ 27} In light of the foregoing analysis, the court finds S.B. No. 163 to be in conflict with the Supreme Court's interpretation of Evid.R. 702 as set forth in *Homan*, and is, therefore, unconstitutional pursuant to Section 5(B), Article IV of the Ohio Constitution. Consequently, the court concludes that unless the Supreme Court revisits its decision in *Homan*, the strict compliance standard must still control the admissibility of evidence concerning standardized field sobriety tests. Because the court has determined that S.B. No. 163 violates Section 5(B), Article IV, it is not necessary to rule on defendant's argument that it also violates the separation-of-powers doctrine.

■ {¶ 28} Having determined that the strict-compliance standard applies, the court finds that the state has failed to meet its burden that the field sobriety tests administered in the case were conducted in strict compliance with the standardized procedures adopted by NHTSA. The state presented no testimony at all on whether the officer conducted the field sobriety tests—either, strictly or substantially—in compliance with the standardized procedures adopted by NHTSA. In fact, there was no testimony offered at all about the NHTSA protocol. The only testimony offered by the state was that the officer conducted the field sobriety

---

5. It is significant to note that other courts that have addressed the same issue have also relied on Evid.R. 702 for the basis of their decisions. See, for example, *United States v. Horn* (D.Md.2002), 185 F.Supp.2d 530, for a thorough analysis of the pertinent Rules of Evidence in the context of determining the admissibility of field sobriety test evidence.

tests in the manner in which he had been trained. Even under a substantial-compliance standard, the court would find that the state failed to meet its burden.

{¶ 29} In *State v. Ryan,* Licking App. No. 02–CA–00095, 2003-Ohio-2803, the Fifth District Court of Appeals made it clear that the state had the burden, in opposing a motion to suppress field sobriety tests, to introduce evidence that the tests were conducted in compliance with the NHTSA standards. In *Ryan,* like this case, there was simply no testimony offered as to these guidelines and the manual itself was not admitted. Therefore, the defendant's motion to suppress the arresting officer's observations of the defendant's performance on the field sobriety tests is granted.

{¶ 30} The defendant further argues that, in light of the fact that the field sobriety tests were not performed in strict compliance with the NHTSA standards, the officer lacked probable cause to arrest her. The court disagrees. Under the Fourth Amendment, a warrantless arrest must be based on probable cause. *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142. Probable cause exists when the facts and circumstances known by an officer, at the time of the arrest, are sufficient to warrant a reasonable person's belief that the defendant has committed or was committing an offense. *Brinegar v. United States* (1949), 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. Once a proper traffic stop is made, an officer's request for the driver to perform field sobriety tests is generally outside the scope of the original stop and must be separately justified on specific and articulable facts establishing a reasonable basis for the request. *State v. Anez* (2000), 108 Ohio Misc.2d 18, 738 N.E.2d 491.

{¶ 31} In this case, the officer's request to the defendant to perform field sobriety tests was justified. He arrived on the scene of a one-car accident and noticed that the driver smelled like she had consumed alcohol. In addition, while performing the tests, defendant indicated to the officer that she had consumed some alcohol. The court finds that the evidence of erratic driving, combined with an odor of alcohol, were sufficient—even without the field sobriety test results—for the officer to arrest the defendant and request that she submit to a chemical breath test. Consequently, her motion to suppress all evidence obtained after her arrest is denied.

{¶ 32} IT IS SO ORDERED.

Judgment accordingly.