{¶ 42} There has been a request for oral argument. The court gave notice of when the pending motions would be considered submitted for decision and the parties filed very thorough memoranda. At this state of the proceedings, the court would not be aided by oral arguments, and the request is denied. *Hooten v. Safe Auto Ins. Co.* (2003), 100 Ohio St.3d 8, 795 N.E.2d 648.

## CONCLUSION

{¶ 43} Depending on the facts, the defendant title companies may owe a duty to the plaintiffs, purchasers of certain real estate, based on the allegations (which are presumed true for purposes of a motion to dismiss) that the title companies knew, should have known, or were willfully ignorant of their participation in a scheme that damaged the plaintiffs.

{¶ 44} The ultimate question before the court is not whether "flipping" is a good or bad thing or even whether it took place, but only whether or not a particular defendant violated the plaintiffs' rights to the extent that the law provides a remedy. The defendants' motions to dismiss are denied; the defendants' motion to strike the exhibits is denied; the plaintiffs are granted until April 2, 2004, to amend their complaint regarding the fraud allegations against the defendants Fidelity and Chelsea.

**The STATE of Ohio**

v.

**PERRY.**

2004-Ohio-7332.]

Athens County Municipal Court, Ohio.

No. 04 TRC 02371 A, B, C.

Decided Aug. 17, 2004.

62

Michael D. Miller, Athens City Prosecutor, for plaintiff.

Todd L. Grace, for defendant.

WILLIAM A. GRIM, Judge.

{¶ 1} This matter came on for consideration upon the state of Ohio's motion to reconsider filed August 4, 2004, regarding this court's decision filed July 28, 2004. The state of Ohio asks the court to follow the recently published decision of *State v. Nutter* (Marion Cty. M.C.2004), 128 Ohio Misc.2d 24, 811 N.E.2d 185, and to reevaluate the evidence under the substantial-compliance standard of R.C. 4511.19(D)(4)(b).

{¶ 2} The motion to reconsider raises several important issues, and the court will discuss each as follows:

I.    Applicability of Evid.R. 702.

II.   Relevance of Test Results and Observations.

III.  Effect of R.C. 4511.19(D)(4)(b).

IV.   Substantial Compliance.

## I.  APPLICABILITY OF EVID.R. 702

{¶ 3} The *Nutter* decision found R.C. 4511.19(D)(4)(b) not to be in conflict with Evid.R. 702 at a suppression hearing because the Ohio Rules of Evidence do not apply to such hearings.  While Evid.R. 104(A) supports that holding, there is case authority specific to prosecutions for operating a vehicle while intoxicated that requires the admissibility of tests to be determined at a suppression hearing. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32; *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887.  Part of the required analysis is whether the test complies with the technical requirements for establishing a threshold for reliability (e.g., more than 20 minutes and less than two hours, proper operational sequence, proper calibration).  If the technical requirements have not been met, the test results are considered unreliable.  *State v. Burnside* (2003), 100 Ohio St.3d 152, 797 N.E.2d 71.

{¶ 4} Most of the law of evidence can be summarized in two general questions: Is it relevant?  It is reliable?  Even if evidence is relevant, it is not admissible unless the court, as gatekeeper, finds it reliable.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Kumho Tire v. Carmichael* (1999), 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238.

{¶ 5} This reliability standard is equally applicable to the field sobriety tests.  So long as the prosecution refers to these as tests, mentions passing or failing, or scores the clues, the methodology must be reliable.  Otherwise, these tests do not yield valid results.  *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952.  The one-leg-stand and walk-and-turn may, even if unreliable as tests, yield observations of the suspect's speech and balance.  *State v. Schmitt* (2004), 101 Ohio St.3d 79, 801 N.E.2d 446.

{¶ 6} There is an excellent discussion, summary of cases, and analysis of the reliability of field sobriety tests found in *United States v. Horn* (D.Md.2002), 185 F.Supp.2d 530.  It was the finding of *Horn* that the three standardized field sobriety exercises of the National Highway Traffic Safety Administration ("NHTSA") were less reliable than advertised.  This court finds that opinion well researched, well reasoned, and persuasive.

{¶ 7} Although persuasive, *Horn* is not the current law in Ohio. By the Ohio Supreme Court decisions of *State v. Bresson* (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330, *Homan* and *Schmitt,* the general reliability of the horizontal-gaze-nystagmus ("HGN"), one-leg-stand, and walk-and-turn tests has been established. If the tests are conducted by a trained officer using approved methodology, they yield reliable test results; if NHTSA-approved methodology is not used, test results are unreliable. If unreliable, test results are inadmissible under Evid.R. 702(C) and 403(A).

{¶ 8} This court disagrees with that part of the *Nutter* decision that *Homan* is an application of common-law evidence rather than of Evid.R. 702. By applying the *Homan* rule to trials, *Schmitt* recognizes that the Rules of Evidence will apply to this issue. In accordance with *Kretz* and *French,* these issues of admissibility are to be determined before trial.

■ {¶ 9} This court determined the test results of the HGN and walk-and-turn to be unreliable to consider for probable-cause determination. The issue of admissibility at trials is open to further pretrial foundational evidence to establish reliability. To this extent, the decision on the HGN and walk-and-turn is reconsidered and more properly characterized as a ruling in limine.

## II. RELEVANCE OF TEST RESULTS AND OBSERVATIONS

{¶ 10} The state of Ohio's motion for reconsideration cites the NHTSA manual's statement that "if a suspect exhibits two or more clues, or cannot complete the test, the suspect's BAC is likely to be above 0.10%. This criterion has been shown to be accurate 68% of the time." This statement is both correctly quoted and scientifically based. It also raises an issue that is often overlooked.

{¶ 11} That issue is the relevance of the field sobriety tests. What fact of consequence do they make more probable or less probable? What are they designed to prove? The answer is found throughout the NHTSA manual that failing each test, by scoring at or above a certain number of clues, is a predictor of testing above a certain alcohol level. There is no finding in the NHTSA manual that failing a test is a direct indication of alcohol-impaired ability to operate a vehicle. This distinction can be important depending on whether we have an impairment charge under R.C. 4511.19(A)(1) or a limits charge under R.C. 4511.19(A)(2) through (9).

■ {¶ 12} Historically, when chemical tests of blood, breath, and urine were developed, they were considered as reflections of alcohol-impaired ability to operate a vehicle. Scientific data had established that drivers are impaired at a blood-alcohol concentration ("BAC") of from 0.05 to 0.15 percent by weight, with

some drivers impaired at the lower level and all at the higher level. The law recognized that relevance and reliability by creating presumptions of impairment if a person tested over the limit. E.g., 135 Ohio Laws, Part II, 1000. In 1983, the law replaced the presumptions with per se violations, R.C. 4511.19(A)(2) et seq., for testing over the limits. 139 Ohio Laws, Part I, 945. A person's actual driving became irrelevant to a per se violation. *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574. Under current law, the BAC levels and impaired ability to operate are separate and independent matters unless related by expert testimony. *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 532 N.E.2d 130.

{¶ 13} This distinction is implicitly recognized by the Ohio Supreme Court in *Schmitt*, where it held that field sobriety observations, even if the test results were invalid, were admissible as relevant to prove impairment. *Schmitt* applied the strict-compliance standard of *Homan* to trials, suggesting that valid field sobriety test results would be relevant to impairment as well as limits cases. Newly enacted R.C. 4511.19(D)(4)(b) definitely makes that connection, returning us to pre–1983 relevance.

{¶ 14} Therefore, giving effect to *Homan*, *Schmitt*, and R.C. 4511.19(D)(4)(b), this court finds the following to be relevant:

{¶ 15} 1. Test results from field sobriety tests done in strict compliance with NHTSA standards are relevant at both probable-cause hearings and trials of impairment and limits cases.

{¶ 16} 2. Test results from field sobriety tests shown by clear and convincing evidence to be as reliable as those done in strict compliance with NHTSA standards (i.e., in substantial compliance) are relevant at both probable-cause hearings and trials of impairment and limits cases.

{¶ 17} 3. Observations from one-leg-stand and walk-and-turn tests not done in either strict or substantial compliance are relevant for both probable-cause hearings and trials of impairment and limits cases.

## III. EFFECT OF R.C. 4511.19(D)(4)(b)

{¶ 18} The linchpin of the *Nutter* decision is that newly enacted R.C. 4511.19(D)(4)(b) overruled the evidentiary ruling in *Homan* and had the constitutional authority to do so. For this proposition, *Nutter* cites *State v. Vega* (1984), 12 Ohio St.3d 185, 12 OBR 251, 465 N.E.2d 1303, which was a four-to-three decision limiting expert testimony against the general reliability of breath-testing machines. *Vega* accepted the legislative finding of reliability and delegation of authority to the director of health to approve methodology.

{¶ 19} *Vega's* deference to the legislature on R.C. 4511.19(D)(1) is not an abdication of the courts' responsibility to determine reliability. The reliability of breath-testing machines had already been accepted by the Ohio Supreme Court in *Westerville v. Cunningham* (1968), 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40. *Vega* did not deal with a situation such as this, in which the legislature attempted to contradict, not follow, the evidentiary ruling of the Ohio Supreme Court.

{¶ 20} The *Nutter* decision also cited *State v. Bresson* (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330, which held that HGN test results were admissible without certain expert testimony. Crucial to the *Bresson* holding is the foundational requirement at 128, 554 N.E.2d 1330:

[R]esults of this test are admissible so long as the proper foundation has been shown *both* as to the officer's training and ability to administer the test *and as to the actual technique* used by the officer in administering the test.

(Emphasis added.) Expert testimony is involved whenever a witness relies upon specialized knowledge or training. *Bresson* found that a trained officer using the proper technique had sufficient specialized knowledge to administer the test and interpret his observations into test results. Threshold issues of relevance and general reliability were satisfied by HGN being a NHTSA-recognized standardized test without testimony validating HGN theory. *Homan* is a reaffirmation of *Bresson* that the proper technique must be used in administering the test for the results of the test to be reliable.

{¶ 21} The courts and legislature serve different functions with constitutionally mandated separation of powers. It is the responsibility of courts to determine the admissibility of evidence on questions of relevance and reliability. If the legislature determined the polygraph to be reliable, would that make it so? If the legislature determined witch-dunking to be reliable, would that make it so? This court does not believe so. Legislative enactments, especially as to the admissibility of evidence, remain subject to judicial review. Section 1, Article IV, Ohio Constitution. See *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, and *In re Coy* (1993), 67 Ohio St.3d 215, 616 N.E.2d 1105, as reaffirmation of reliability being determined by rules of evidence rather than by statutes.

{¶ 22} There is one aspect of R.C. 4511.19(D)(4)(b) that was not discussed in *Nutter* but was noted in *State v. Weiland*, 127 Ohio Misc.2d 138, 2004-Ohio-2240, 808 N.E.2d 930. That aspect is judicial review. R.C. 4511.19(D)(4)(b)(iii) reads as follows:

(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the courts shall admit the testimony or evidence

and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

The enactment directs the admissibility of field sobriety tests "if the evidence is admissible under the Rules of Evidence." It is the explicit legislative intent for questions of admissibility to be determined by the Ohio Rules of Evidence.

{¶ 23} This legislative deference is similar to the language of R.C. 4511.19(D)(1) that "the court *may* admit evidence on the concentration of alcohol." (Emphasis added.) Questions of admissibility are ultimately left to the courts. By subjugating R.C. 4511.19(D)(4)(b) to the Rules of Evidence, the legislature has complied with Section 5(B), Article IV of the Ohio Constitution. For this reason, this court believes that the statute is constitutional.

{¶ 24} The legislative subjugation of R.C. 4511.19(D)(4)(b) to the Rules of Evidence may make it constitutional, but it also makes it ineffective to negate the holding of *Homan.* The holding of *Homan* is that absent strict compliance, the test results are inherently unreliable. If unreliable, the test results are inadmissible under Evid.R. 702(C) and 403(A).

## IV. SUBSTANTIAL COMPLIANCE

{¶ 25} R.C. 4511.19(D)(4)(b) requires clear and convincing evidence of substantial compliance. What is "substantial compliance"? It is obviously less than strict compliance, but how much less? Since the term is not legislatively defined, courts are apparently left with some discretion to determine the substantiality of the compliance. The Ohio Supreme Court has accepted substantial compliance as a foundation for breath-test results in *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740, and *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902. In *Homan,* the Supreme Court distinguished those cases and defined substantial compliance as "minor procedural deviations that * * * in no way affected the ultimate results." 89 Ohio St.3d at 426, 732 N.E.2d 952.

{¶ 26} This court could find substantial compliance if it had clear and convincing evidence that any given deviation from strict compliance would not affect the outcome. The state of Ohio has submitted argument, but not testimony or other evidence, that the deviations are inconsequential. The court has taken judicial notice of the NHTSA instruction manual on field sobriety tests (HS 178 R1/02). Its 64 pages reflect substantial research and thought. There is apparently a reason why instructions are what they are. The manual does allow the tests to be given in less than ideal environmental conditions, noting research that the results remain valid. The manual provides no such allowance for an officer's deviation from the prescribed methodology.

{¶ 27} The court suspects that some deviations in methodology on the one-leg-stand and walk-and-turn tests are inconsequential. Pursuant to *State v. Burnside* (2003), 100 Ohio St.3d 152, 797 N.E.2d 71, this court is permitted to excuse errors that are clearly de minimus. In the absence of testimony or documentation from those involved in creating the NHTSA standards and instructions, or those who provided the factual basis for R.C. 4511.19(D)(4)(b), what basis does the court have to choose what is de minimus and what is not? This is the scientific/technical evidence the court seeks in order to go beyond the Supreme Court's ruling in *Homan* that absent strict compliance, results are "inherently unreliable."

{¶ 28} Thus, even assuming the constitutionality of R.C. 4511.19(D)(4)(b), the state of Ohio must provide clear and convincing *evidence* that a particular deviation in methodology would not compromise the reliability of each test. This has not been done in this case, and therefore the court did not and, on reconsideration, cannot, find substantial compliance.

## CONCLUSION

{¶ 29} A. R.C. 4511.19(D)(4)(b) is constitutional, as it is explicitly subject to the Ohio Rules of Evidence regarding the admissibility of evidence.

{¶ 30} B. R.C. 4511.19(D)(4)(b) does not legislatively overrule *State v. Homan,* even if intended to do so.

{¶ 31} C. Substantial compliance with NHTSA standards for field sobriety tests can be met by the state's presentation of clear and convincing evidence that any given deviation from the prescribed methodology would not affect the test results.

{¶ 32} D. If the reliability of any test results is challenged, the court will make a pretrial determination pursuant to Evid.R. 403 and 702.

{¶ 33} E. In the absence of strict or substantial compliance with NHTSA standards, test results are deemed unreliable and are therefore inadmissible.

{¶ 34} F. Although test results (pass/fail, scoring clues) of NHTSA field sobriety tests may not be admissible, observations of a suspect's appearance, speech, and balance are deemed both relevant and reliable and are therefore admissible unless suppressed as fruits of an illegal detention.

## DECISION

{¶ 35} The state of Ohio's motion to reconsider is denied as to the BAC results and any other evidence gathered after arrest. The motion is granted, in part, to

recharacterize the court's findings on HGN and walk-and-turn to be in limine, pending any pretrial foundational evidence the state presents.