DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Adam W. Mapes, appeals his conviction in the Fulton County Court, Western District, on one count of driving with a prohibited breath alcohol concentration, a violation of R.C. 4511.19(A)(3) and first degree misdemeanor. Appellant proposes two assignments of error on appeal:
{¶ 2} "THE TRIAL COURT ERRED BY NOT FINDING O.R.C. 4511.19, AS AMENDED BY S.B. 163, UNCONSTITUTIONAL."
{¶ 3} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."
{¶ 4} On November 27, 2003, Trooper Shane Borton of the Ohio State Highway Patrol observed appellant traveling east on County Road N near Fayette, Ohio, in a red Ford pickup. After performing a computer check and discovering that appellant's license plate displayed an expired sticker, Borton executed a traffic stop. When Borton approached the vehicle and spoke with appellant and his two passengers, he noticed that appellant had bloodshot and glassy eyes, and he also detected an alcohol-like odor within the vehicle. After some brief questioning, appellant denied having consumed any alcohol. Borton ordered appellant out of the vehicle, spoke with appellant further, and again detected a strong odor of alcohol. At this point, appellant admitted that he had consumed one beer. Trooper Borton then administered three field sobriety tests: the Horizontal Gaze Nystagmus ("HGN"), the One-Leg Stand, and the Walk-and-Turn. Based on his field sobriety test performance, appellant was arrested and charged with expired plates, driving under the influence, and driving with a prohibited breath alcohol concentration.
{¶ 5} On January 6, 2004, appellant filed a motion to dismiss on grounds that there was no probable cause for his arrest, as well as a motion to suppress evidence obtained from appellant's warrantless arrest and seizure. On April 5, 2004, appellant filed a motion challenging the constitutionality of Senate Bill 163. The trial court conducted a hearing on May 25, 2004, and denied all of appellant's motions. On August 25, 2004, the trial court dismissed the charges for expired plates and driving under the influence on the state's motion. The case proceeded to a jury trial on the sole charge of driving with a prohibited breath alcohol concentration, after which the jury found appellant guilty.
{¶ 6} Assignment of Error I
{¶ 7} Appellant first contends that R.C. 4511.19, as amended by S.B. 163 in 2003, is unconstitutional as a usurpation of the Ohio Supreme Court's authority to promulgate Rules of Evidence.
{¶ 8} Amended R.C. 4511.19(D) relevantly provides:
{¶ 9} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
{¶ 10} "(i) The officer may testify concerning the results of the field sobriety test so administered.
{¶ 11} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
{¶ 12} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
{¶ 13} Prior to the 2003 amendment, the Ohio Supreme Court held inState v. Homan (2000), 89 Ohio St.3d 421, that the results of field sobriety tests were not admissible unless performed in strict compliance with the procedures established by the National Highway Traffic Safety Administration ("NHTSA"). Essentially, appellant contends that the Ohio Supreme Court in Homan implicitly interpreted Evid.R. 702 to create a standard of admissibility for expert testimony regarding field sobriety tests. To accept this argument, however, one must view the Ohio Supreme Court's discussion in Homan on field sobriety test reliability as an implicit interpretation of an evidentiary rule dealing exclusively with expert testimony. Evid.R. 702 governs the admissibility of expert testimony and provides, in pertinent part:
{¶ 14} "A witness may testify as an expert if all of the following apply:
{¶ 15} "(A) The witness' testimony either relates to matters beyond the
{¶ 16} knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
{¶ 17} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
{¶ 18} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
{¶ 19} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
{¶ 20} "(2) The design of the procedure, test, or experiment reliably implements the theory;
{¶ 21} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
{¶ 22} Citing Rockey v. 84 Lumber Co. (1993), 66 Ohio St.3d 221, appellant alleges that R.C. 4511.19(D)(4)(b), enacted after the Ohio Supreme Court's decision in Homan, is unconstitutional under Art. IV, §5(B) of the Ohio Constitution. Art. IV, § 5(B) states, "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." In Rockey, the Ohio Supreme Court stated "The Ohio Rules of Civil Procedure, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted statutes purporting to govern procedural matters." Id. at 224 — 225.
{¶ 23} Further, appellant cites State ex rel. Ohio Academy of TrialLawyers v. Sheward (1999), 86 Ohio St.3d 451, wherein the Ohio Supreme Court stated, "Like the Ohio Rules of Civil Procedure, the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." Id. at 491, citing In re Coy (1993), 67 Ohio St.3d 215.
{¶ 24} Appellant argues that R.C. 4511.19(D)(4)(b) and Evid.R. 702 are inconsistent insofar as R.C. 4511.19(D)(4)(b) attempts to alter the standard for expert testimony admissibility. Applying the Sheward rule, Evid.R. 702 would control over the inconsistent and subsequently enacted R.C. 4511.19(D)(4)(b). Thus, appellant maintains that field sobriety tests must be administered in strict compliance with the procedures established by the NHTSA, and evidence procured by field sobriety tests administered with less than strict compliance must be suppressed. Therefore, appellant posits that without this evidence, there was no probable cause for his arrest.
{¶ 25} When no conflict between a statute and a Rule of Evidence is presented, "a specific statute can govern the admissibility of evidence rather the Rules of Evidence." Phipps, 2004-Ohio-4400, at ¶ 12, citingState v. Thompson (Jan. 24, 1996), 9th Dist. No. 95CA006047. In addition, it is a "well-settled principle of statutory construction that where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities." Woods v. Telb
(2000), 89 Ohio St.3d 504, 516-517, quoting State v. Sinito (1975),43 Ohio St.2d 98, 101. Thus, "the burden of showing the unconstitutionality of a statute is upon the one challenging its validity and it must be proven beyond a reasonable doubt." Phipps, 2004-Ohio-4400, at ¶ 5, quoting State v. Meyer (1983), 14 Ohio App.3d 69.
{¶ 26} A number of courts in Ohio have already decided the constitutionality of R.C. 4511.19(D)(4)(b), providing a basis for our decision in this case.
{¶ 27} The Twelfth Appellate District upheld the statute's constitutionality in State v. Miracle, 12th Dist. Nos. CA2003-11-275 and CA2003-11-283, 2004-Ohio-7137, at ¶ 27. In Miracle, the defendant-appellant set forth the same constitutional argument as appellant in the instant case, that R.C. 4511.19(D)(4)(b) violated the separation of powers doctrine by conflicting with Evid.R. 702. In rejecting appellant's argument, the court in Miracle emphasized that "the Ohio Rules of Evidence, Evid.R. 702 included, are silent as to whether field sobriety tests must be administered in strict or substantial compliance with applicable testing standards." Id.
{¶ 28} Similarly, in State v. Phipps, the Third Appellate District also upheld the constitutionality of R.C. 4511.19(D)(4)(b). Phipps,
2004-Ohio-4400, at ¶ 13. The Phipps court stated, "Although we are very cognizant of the judicial branch's exclusive authority under the Ohio Constitution to promulgate rules of evidence in its courts, the legislature's enactment of R.C. 4511.19 has not infringed upon that authority." Id. at ¶ 12. The court went on to note that the legislature has created standards for the admissibility of evidence on numerous occasions. Id.
{¶ 29} In contrast, the Licking County Municipal Court found R.C.4511.19(D)(4)(b) unconstitutional in State v. Weiland,127 Ohio Misc.2d 138, 2004-Ohio-2240, at ¶ 27. In doing so, the Weiland
court stated, "There is no doubt that Senate Bill No. 163 conflicts with and seeks to alter the Supreme Court's evidentiary ruling in State v.Holman [sic]." Id. at ¶ 24.
{¶ 30} Additionally, in State v. Robinson, 5th Dist. No. 2004-CA-45,2005-Ohio-2280, at ¶ 44, the Fifth Appellate District upheld the constitutionality of the statute with respect to nonscientific field sobriety tests, but held the statute unconstitutional with respect to the HGN test. In Robinson, the court emphasized the scientific nature of the HGN test, and stated, "A trial judge or jury is not suited, absent expert testimony, to determine whether a given deviation from the testing protocol found in the NHTSA manual renders the results of the HGN test unreliable." Id. at ¶ 29. The Robinson court ultimately held the statute "viable only so far as it complements Rule 702 of the Ohio Supreme Court." Id. But see, City of Mt. Vernon v. Seng, 5th Dist. No. 04CA000012, 2005-Ohio-2915, at ¶¶ 51-72, (holding Evid.R. 702 inapplicable to field sobriety test admissibility).
{¶ 31} We agree with the decisions in Miracle and Phipps, and uphold the constitutionality of R.C 4511.19(D)(4)(b). Presently, only the Fifth Appellate District has found R.C. 4511.19(D)(4)(b) unconstitutional, and with their recent opinion in Seng, they have indicated a willingness to depart from that logic. Furthermore, the Weiland court's construction ofHoman as an "implicit interpretation of Rule 702 of the Ohio Rules of Evidence," is not binding, and that interpretation of Homan is required to reach the conclusion that R.C. 4511.19(D)(4)(b) usurps the power of the Ohio Supreme Court to promulgate rules of evidence. Weiland,2004-Ohio-2240, at ¶ 25.
{¶ 32} Since we conclude that the Ohio Rules of Evidence contain no rule stating whether field sobriety tests must be administered in strict or substantial compliance, there is no conflict. Miracle, 2004-Ohio-7137, at ¶ 27. In the absence of conflict, the Ohio Legislature may enact a statute governing the admissibility of evidence rather than the Rules of Evidence. Phipps, 2004-Ohio-4400, at ¶ 12. Therefore, R.C.4511.19(D)(4)(b) is constitutional, and appellant's first assignment of error is not well-taken.
{¶ 33} Assignment of Error II
{¶ 34} Appellant next contends that the trial court erred in denying his motion to suppress. In doing so, appellant first acknowledges that the initial stop was reasonable, but contends there was no reasonable suspicion to detain him further. Second, appellant alleges that there was no probable cause for his arrest.
{¶ 35} As a preliminary matter, appellee submits that appellant "arguably waived" the unlawful detention issue since appellant only contested the stop at trial, and not his further detention. However, appellant's argument at trial that his initial stop was unlawful "arguably" encompasses his argument on appeal that the further detention was unlawful. Moreover, appellee cites no authority for this proposition. Thus, the issue has not been waived.
{¶ 36} Appellate review of a trial court decision on a motion to suppress evidence presents a mixed question of law and fact. State v.McNamara (1997), 124 Ohio App.3d 706, 710. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8, citing State v. Mills (1992), 62 Ohio St.3d 357,366. The appellate court must then accept the trial court's findings of fact provided that they are supported by competent, credible evidence.State v. DePalma (Jan. 22, 1991), 4th Dist. No. 1633. Next, the appellate court determines independently whether the facts in the case satisfy the applicable legal standard. State v. Claytor (1993), 85 Ohio App.3d 623,627.
{¶ 37} Though appellant concedes that the initial stop was reasonable, he argues that his further detention was "intrusive and unlawful." We find appellant's argument unpersuasive.
{¶ 38} There are two types of traffic stops, each with its own constitutional standard. The first type of stop, the non-investigatory stop, occurs when an officer witnesses a traffic code violation and stops the motorist to issue a citation, warning, or to effect an arrest. Statev. Downs, 6th Dist. No. WD-03-030, 2004-Ohio-3003, at ¶¶ 10-11. In this type of stop, there must be probable cause or "a reasonable ground for belief of guilt." Carroll v. United States (1925), 267 U.S. 132, 161. Probable cause is provided when an officer observes a traffic code violation. Whren v. United States (1996), 517 U.S. 806, 810. The second type of stop is the investigatory stop, or the "Terry" stop, Terry v.Ohio (1968), 392 U.S. 1, which requires reasonable and articulable suspicion that an offense has been committed or is in the process of being committed to be constitutionally valid. Delaware v. Prouse (1979),440 U.S. 648, 661.
{¶ 39} In the case sub judice, Trooper Borton discovered appellant's license plate had expired by performing a computer check on the plate. At this point, probable cause arose for Borton to execute a traffic stop. Since probable cause arose before Borton executed the stop, appellant rightly concedes that the initial stop was proper.
{¶ 40} Nevertheless, appellant maintains that his further detention was unlawful because there was no basis to suspect he had committed or was about to commit a different offense. For a detention of this nature to be valid under the Fourth Amendment, it must be reasonable under the circumstances. Whren, supra. Furthermore, when an officer's objective reasons for prolonging detention in a traffic stop are unrelated to the purpose of the initial stop, the continued detention must be predicated on "articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention." State v. McMillin, 6th Dist. No. H-04-018, 2005-Ohio-2096, at ¶ 23, citing State v. Robinette
(1997), 80 Ohio St.3d 234, paragraph one of the syllabus. In effect, the non-investigatory stop becomes a Terry stop when further detention is predicated upon facts unrelated to the purpose of the initial stop.
{¶ 41} Moreover, an officer's observation of unusual conduct that leads him to reasonably conclude criminal activity may be afoot must be based on a totality of the circumstances. Terry, supra, at 30; see, also State v. Conner, 8th Dist. No. 84073, 2005-Ohio-1971, at ¶ 34. Additionally, "these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Conner, 2005-Ohio-1971, at ¶ 34, citing Statev. Freeman (1980), 64 Ohio St.2d 291, 295. The Ohio Supreme Court inFreeman noted several relevant factors in determining whether an officer has reasonable suspicion to initiate a traffic stop or to further detain someone. Freeman, supra. These factors include, but are not limited to: (1) whether the stop occurred in a high-crime area; (2) whether the officer knew of recent criminal activity in the area; (3) the time of the stop; (4) whether the defendant's conduct was suspicious; and (5) the officer's training and experience. Id.; see, also, City of N. Olmsteadv. Tackett, 8th Dist. No. 81068, 2002-Ohio-6330, at ¶ 16.
{¶ 42} In the instant case, while Trooper Borton lawfully detained appellant for the expired license plate violation, he noticed an odor of alcohol in the vehicle as well as appellant's glassy and bloodshot eyes. Furthermore, appellant's speech was "somewhat slurred." Once Borton requested that appellant exit the vehicle and he was separated from the passengers, Borton detected a strong odor of alcohol coming from appellant. The time of the stop is also a relevant circumstance, as it was shortly past two in the morning, a time when a dangerous number of drunk drivers are on the road. In sum, there was reasonable and articulable suspicion to detain appellant.
{¶ 43} Appellant next contends that Trooper Borton lacked probable cause to arrest him for driving under the influence. More specifically, appellant posits that the results of the field sobriety tests are inadmissible because strict compliance with NHTSA standards was required and that threshold was not satisfied.
{¶ 44} Since R.C. 4511.19(D)(4)(b) as amended by S.B. 163, is constitutional, see discussion supra, the governing standard for field sobriety test admissibility is substantial compliance and not strict compliance as appellant argues. However, R.C. 4511.19(D)(4)(b) does not define substantial compliance. A determination whether the facts satisfy the substantial compliance standard is made on a case by case basis.Robinson, 2005-Ohio-2280, at ¶ 45.
{¶ 45} Here, the facts sustain the conclusion that Trooper Borton substantially complied with NHTSA standards. Though it does appear in Trooper Borton's in-car camera footage that he paused his finger while moving it across appellant's face in the equal tracking test, there is nothing in the NHTSA manual that forbids him from doing so. The manual only states, "The eyes can be observed to jerk or `bounce' as they follow a smoothly moving stimulus."
{¶ 46} In the maximum deviation test, Borton clearly held the stimulus for a minimum of four seconds, as mandated by the NHTSA manual. The manual states, "Distinct nystagmus will be evident when the eye is held at maximum deviation for a minimum of four seconds."
{¶ 47} Moreover, Borton's instructions for the One-Leg Stand test at the very least substantially complied with the NHTSA manual. Borton's in-car camera footage also shows that he instructed appellant as to the initial position, then proceeded to demonstrate the test. Borton then instructs appellant, "If you understand the instructions, go ahead and begin," after which appellant begins the test without objection.
{¶ 48} Appellant also contends that Trooper Borton was in "relatively constant motion" during the Walk-and-Turn test, contrary to the NHTSA manual which states that the officer is required to remain as motionless as possible. However, this is a gross over-characterization of the NHTSA's language, which instructs one administering the test only to "limit your movement which may distract the suspect during the test." Furthermore, upon review of the footage captured by Trooper Borton's in-car camera, it seems improbable that Borton's bodily movements would have any effect on appellant's performance of the test. This is especially true while appellant's back was facing Trooper Borton.
{¶ 49} Additionally, we are unwilling to adopt appellant's contention that there is an implicit requirement that the designated line be sufficiently illuminated for the Walk-and-Turn test. The NHTSA manual states, "Recent field validation studies have indicated that varying environmental conditions have not affected a suspect's ability to perform this test." Moreover, appellant raised no objection as to the designated line's illumination while he was performing the test.
{¶ 50} Therefore, we find that Trooper Borton substantially complied with NHTSA standards for administering field sobriety tests, and there was probable cause to arrest appellant.
{¶ 51} In light of the foregoing, we find appellant's second assignment of error not well-taken.
{¶ 52} For the foregoing reasons, the judgment of the Fulton County Court, Western District, is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Fulton County and for which execution is awarded. See App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.