OPINION
{¶ 1} Defendant-appellant, Richard Miracle, appeals his felony conviction for driving under the influence of alcohol (DUI) and the consecutive prison sentence for his violation of community control regarding a prior felony DUI conviction. We affirm.
 {¶ 2} On May 13, 2003 at approximately 2:56 a.m., Officer David Kirsch of the Middletown Police Department observed a van driven by appellant traveling south on Tytus Avenue at a speed well in excess of the posted 35 m.p.h. limit. The van was also centered on the double yellow line dividing the street. Officer Kirsch then attempted to catch up to the van in his patrol car. As the van approached a red traffic light at the intersection of Tytus and Nelbar, at a high rate of speed, appellant tapped the brakes and then continued through the intersection just as the light changed to green.
 {¶ 3} At this point, Officer Kirsch activated his cruiser's overhead lights and siren and attempted to stop appellant. Appellant did not pull over right away, but continued down the street approximately another quarter mile. Appellant then pulled the van almost entirely up onto an adjacent sidewalk before finally stopping with half the vehicle on the sidewalk and half on the street.
 {¶ 4} Once stopped, appellant exited the van and began to walk back towards Officer Kirsch's cruiser. From this point, an automated video camera mounted in the cruiser began to film the remainder of the encounter. Appellant appeared unsteady and stiff on his feet. The officer observed appellant had bloodshot and glassy eyes, slurred speech, and a very strong odor of alcohol.
 {¶ 5} Officer Kirsch asked appellant to perform a series of field sobriety tests. Appellant cooperated in performing the Horizontal Gaze Nystagmus ("HGN") test. Appellant next began to perform the one-leg stand test, but encountered some difficulties part way through and stopped, refusing without further explanation to perform that or any additional tests.
 {¶ 6} Officer Kirsch then arrested appellant for DUI. Immediately thereafter and continuing throughout transportation to the police station, the videotape shows appellant offered more than a dozen times in slow, slurred speech to cooperate with police in undercover narcotics investigations in return for leniency. Appellant made wildly escalating claims regarding the size of drug busts he could deliver as an informant. Once at the police station, appellant refused to take a breath test. Further investigation confirmed appellant had a lifetime license suspension as a result of multiple prior DUI convictions.
 {¶ 7} A Butler County grand jury indicted appellant in case CR03-05-0781 for DUI as a felony of the third degree and for misdemeanor driving under suspension ("DUS"). Because of these charges, appellant additionally faced a violation of his community control regarding a previous felony DUI conviction in case CR00-05-0732.
 {¶ 8} Appellant moved to suppress evidence of the field sobriety tests, claiming they were performed improperly. Without these tests, appellant maintained there was no probable cause for his arrest. During closing argument at the motion to suppress, appellant additionally challenged the constitutionality of R.C. 4511.19(D)(4)(b), a statute allowing for the admission of field sobriety tests if administered in "substantial compliance" with applicable testing standards. The trial court overruled appellant's motion to suppress. At trial, a jury convicted appellant of felony DUI and of DUS as charged in case CR03-05-0781. Appellant received a prison term of one year for the felony DUI and a concurrent jail term of five months for the misdemeanor DUS.
 {¶ 9} Subsequently, appellant admitted to a violation of his community control in case CR00-05-0732. He received a prison term of 18 months,[1]
to be served consecutively to the term in case CR03-05-0781. Appellant now brings this appeal, raising three assignments of error:
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court, in Case No. CR03-05-0781, erred in holding that evidence of the field sobriety tests administered by kirsch to miracle created probable cause to arrest him for driving under the influence under R.C. 4511.19(A)(1)."
 {¶ 12} Although this assignment of error is cast in terms of probable cause to arrest, the basis of the argument actually centers on the constitutionality of R.C. 4511.19(D)(4)(b)[2] concerning the standard for admissibility of field sobriety tests.[3] Appellant asserts the statute is null and void as an unconstitutional infringement on a more stringent standard previously set by decision of the Ohio Supreme Court. When the more stringent standard is applied, appellant submits evidence of the field sobriety tests should have been suppressed, resulting in a lack of probable cause for a DUI arrest.
 {¶ 13} Prior to enactment of R.C. 4511.19(D)(4)(b), the Ohio Supreme Court held that in order for the results of field sobriety tests to be admissible as evidence of probable cause to arrest, they must be performed in strict compliance with the procedures promulgated by the National Highway Traffic Safety Administration (NHTSA). State v. Homan,89 Ohio St.3d 421, 2000-Ohio-212. In response, the Ohio General Assembly enacted R.C. 4511.19(D)(4)(b) as part of Amended Substitute Senate Bill 163 (S.B. 163), effective April 9, 2003. The statute reads in pertinent part as follows:
 {¶ 14} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantialcompliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 15} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 16} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *.
 {¶ 17} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." (Emphasis added.)
 {¶ 18} After passage of S.B. 163, the Ohio Supreme Court extendedHoman in a pre-S.B. 163 case to apply the strict compliance standard to admissibility of field sobriety tests at trial. State v. Schmitt,101 Ohio St.3d 79, 82, 2004-Ohio-37. In doing so, the Schmitt court noted their decision would have limited prospective application due to R.C.4511.19(D)(4)(b) passed the year before. Id. However, we recognize the issue of the statute's constitutionality was not before the court inSchmitt. Nevertheless, R.C. 4511.19(D)(4)(b) effectively supersededHoman and Schmitt for offenses committed after April 9, 2003 and established a "substantial compliance" standard for the admissibility of field sobriety tests for purposes of both probable cause to arrest and as evidence of guilt at trial.
 {¶ 19} Appellant states that R.C. 4511.19(D)(4)(b) is constitutionally inconsistent with the separation of powers doctrine in Section 5(B), Article IV of the Ohio Constitution. Specifically, appellant asserts that the government's legislative branch (the Ohio General Assembly) in effect altered the Ohio Rules of Evidence, which is the exclusive domain of the Ohio Supreme Court, representing the judicial branch.
 {¶ 20} When determining the constitutionality of a legislative enactment such as R.C. 4511.19(D)(4)(b), we begin with the principle that the statute enjoys a presumption of constitutionality. State ex rel.Dickman v. Defenbacher (1955), 164 Ohio St. 142. "[T]he party challenging the statute bears the burden of proving the unconstitutionality of the statute beyond a reasonable doubt." Woods v. Telb, 89 Ohio St.3d 504, 511,2000-Ohio-171. A court should not declare a statute to be unconstitutional if a constitutional construction is available. State exrel. Steffen v. Kraft, 67 Ohio St.3d 439, 440, 1993-Ohio-32. Under the Ohio Constitution, the General Assembly generally may pass any law unless specifically prohibited by the state (or federal) constitutions. State exrel. Jackman v. Cuyahoga Co. Court of Common Pleas (1967),9 Ohio St.2d 159, 161.
 {¶ 21} Therefore, in this case appellant must establish beyond a reasonable doubt that R.C. 4511.19(D)(4)(b) fatally infringes on the separation of powers doctrine of the Ohio Constitution. Although Ohio does not have an overt constitutional provision declaring a doctrine of separation of powers, the concept is firmly established in those sections defining the substance and scope of powers granted to the three branches of state government. State v. Harmon (1877), 31 Ohio St. 250. This doctrine maintains the integrity and independence of each branch. Stateex rel. Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 475,1999-Ohio-123. Thus, the General Assembly is prohibited from exercising any judicial power not expressly conferred by the Constitution. Section32, Article II, Ohio Constitution, State v. Thompson, 92 Ohio St.3d 584,2001-Ohio-1288.
 {¶ 22} Section 5(B), Article IV of the Ohio Constitution provides, in pertinent part, that "[t]he Supreme Court shall prescribe rules governing the practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." It goes on to provide that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Id.
 {¶ 23} There is no question that "the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), ArticleIV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters."Sheward, 86 Ohio St.3d at 491, citing In re Coy, 67 Ohio St.3d 215,1993-Ohio-202. The heart of appellant's argument is that Homan in effect established by judicial decision an "evidentiary rule" for the standard of admissibility of field sobriety tests. That done, appellant concludes it is beyond the General Assembly's power to change it by statute.
 {¶ 24} Since submission of appellant's brief, several Ohio courts have considered this precise issue. The Third Appellate District upheld the constitutionality of R.C. 4511.19(D)(4)(b) in State v. Phipps, Auglaize App. No. 2-03-39, 2004-Ohio-4400, discretionary appeal denied ___ Ohio St.3d ___, 2004-Ohio-6585. That court rejected the argument that Homan
was a judicial interpretation of Evid.R. 702 regarding the admissibility of expert testimony.[4] Id. at ¶ 11. The Phipps court found significant the previous Ohio Supreme Court decision of State v. Bresson
(1990), 51 Ohio St.3d 123. Phipps characterized Bresson as holding HGN field sobriety tests are admissible without "expert testimony." SeeBresson at 127. Phipps found the lack of any mention of Evid.R. 702 inHoman to be "reasoned and deliberate." Phipps at ¶ 11.
 {¶ 25} Similarly, the Marion County Municipal Court upheld the constitutionality of R.C. 4511.19(D)(4)(b) in State v. Nutter,128 Ohio Misc.2d 24, 2004-Ohio-3143. Nutter observed more plainly that because "no expert testimony is required for the admission of field sobriety tests, Evid.R. 702 does not have any application on this issue." Id. at 28.
 {¶ 26} On the other hand, the Licking County Municipal Court arrived at the opposite conclusion in State v. Weiland, 127 Ohio Misc.2d 138, 146,2004-Ohio-2240. The Weiland court found Homan to clearly be "an implicit interpretation of Rule 702 of the Ohio Rules of Evidence." Id. Weiland
saw S.B. 163 as an attempt by the legislature to change the reliability threshold for admission of field sobriety tests from that set by Evid.R. 702 and Homan. Id. at 147. Weiland clearly found Evid.R. 702 applicable to the admission of field sobriety tests.
 {¶ 27} After careful consideration, we arrive at the same ultimate conclusion as do Phipps and Nutter.[5] In doing so, we find the above described Evid.R. 702 debate to be unnecessary to resolution of this issue.[6] It remains that the Ohio Rules of Evidence, Evid.R. 702 included, are silent as to whether field sobriety tests must be administered in strict or substantial compliance with applicable testing standards. Instead, Evid.R. 102 expressly provides that "[t]he principles of the common law of Ohio shall supplement the provision of these rules."
 {¶ 28} Mindful of the presumption of constitutionality a statute enjoys, we do not believe appellant has demonstrated beyond a reasonable doubt that R.C. 4511.19(D)(4)(b) violates the Ohio's doctrine of separation of powers. Instead, we view R.C. 4511.19(D)(4)(b) as a development of common law pursuant to Evid.R. 102 rather than a direct affront to a standard established in the Ohio Rules of Evidence through judicial decree.
 {¶ 29} As a result, the state in this case was required only to show that Officer Kirsch performed the field sobriety tests in substantial compliance with the applicable standards described in R.C.4511.19(D)(4)(b). State v. Nicholson, Warren App. No. CA2003-10-106,2004-Ohio-6666. Appellant has not argued that the tests performed here did not meet this substantial compliance standard. Neither has he argued that the totality of the evidence, including the field sobriety tests, fails to give rise to probable cause to arrest for DUI. As such, we find it was not error for the trial court to determine there was probable cause to support appellant's arrest for DUI. Appellant's first assignment of error is overruled.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "The trial court, in Case No. CR03-05-0781, erred in convicting miracle of driving under the influence in violation of R.C. 4511.19(A)(1) against the manifest Weight of the evidence."
 {¶ 32} In the second assignment of error, appellant argues his conviction for driving under the influence of alcohol is against the manifest weight of the evidence because of the officer's failure to properly administer the two field sobriety tests. We find this argument unpersuasive.
 {¶ 33} "Weight of the evidence concerns the `inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) State v.Thompkins, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed. 1990) at 1594. In determining whether a conviction is contrary to the manifest weight of the evidence, an appellate court must review the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and taking into account the witnesses' credibility, to determine if the jury clearly lost its way in resolving evidentiary conflicts and created such a manifest miscarriage of justice that its verdict must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172, 175, quoted inThompkins, 78 Ohio St.3d at 387. However, authority to reverse a verdict in this manner is reserved for the rare and exceptional case where the evidence weighs heavily against conviction. Id. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier's decision is owed deference, since the trier of fact is "`best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" State v. Miles, Butler App. No. CA2001-04-079, 2002-Ohio-1334, quoting Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80.
 {¶ 34} Appellant argues that the strongest evidence against him regarding his DUI conviction was his failure of the two field sobriety tests, which appellant maintains were flawed as challenged in the first assignment of error. Without this evidence, appellant asserts his conviction is against the manifest weight of the evidence and must be reversed. However, we have already held in the first assignment of error that the field sobriety tests need only be administered in substantial, rather than strict, compliance with NHTSA testing standards, and appellant has not argued the tests conducted here did not meet that threshold.
 {¶ 35} Further, there was ample evidence beyond the field sobriety tests to support a conviction at trial for DUI. The officer testified he observed unusual driving on the part of appellant. This initially included excessive speed and straddling the center double yellow line at approximately 2:56 a.m. when no other traffic was in the area. Appellant then approached a red traffic light at a high rate of speed, tapped the brakes, and entered into the intersection just as the light turned green.
 {¶ 36} After activating the police cruiser lights and siren, the officer pursued appellant approximately one-quarter mile before appellant stopped. When appellant did pull over, his van went up almost entirely on the sidewalk before stopping half on the sidewalk and half on the roadway. When the officer approached appellant, he noticed appellant exhibited bloodshot and glassy eyes, slurred speech, unsteadiness on his feet, and smelled very strongly of alcohol.
 {¶ 37} The officer arrested appellant after the disputed field sobriety tests. Immediately upon arrest and continuing throughout transportation to the police station, a videotape shows appellant offered more than a dozen times in slow, slurred speech to cooperate with police in undercover narcotics investigations in return for leniency. Appellant made wildly escalating claims regarding the size of drug busts he could deliver as an informant. Once at the police station, appellant refused to take a breath test.
 {¶ 38} In contrast to the state's case, appellant denied any bad driving. Appellant did acknowledge the videotape showed his van parked halfway up on the sidewalk, but said he did so to avoid becoming a hazard to other traffic. Contrary to the strong odor of alcohol the officer described, appellant asserted he had not consumed any alcohol at all. Appellant admitted he was an alcoholic, but maintained he quit drinking due to guilt over his mother's death resulting from a car accident while she was on her way to visit appellant in 2002 during his previous incarceration for the DUI in case CR00-05-0732.
 {¶ 39} To explain his unsteadiness and stiffness on the videotape, appellant offered evidence through himself and coworkers that several days before the traffic stop he injured his knee at his place of employment in a lumberyard. However, appellant never reported the accident to supervisors nor made any workers' compensation claim. Appellant also did not mention his knee injury to the officer during the traffic stop.
 {¶ 40} To explain why he was driving at all at 2:56 a.m. with a lifetime license suspension, appellant claimed he was depressed over his mother's death and related circumstances and had decided to check himself into Middletown Regional Hospital, hoping for a transfer to the Veterans' Administration Hospital. However, the prosecution injected doubt as to whether appellant was on the most direct route to the hospital when stopped by the officer.
 {¶ 41} Appellant also offered much evidence to explain why he chose not to take a breath test. The crux was that appellant claimed he had just gargled with mouthwash to freshen up before leaving for the hospital and was fearful of registering a false positive for alcohol.
 {¶ 42} On this evidence, we cannot say the record establishes that the jury clearly lost its way in resolving evidentiary conflicts and created such a manifest miscarriage of justice that its verdict must be reversed and a new trial ordered. See State v. Wolfe, Summit App. No. 21260, 2003-Ohio-5051. Thus, appellant's conviction for DUI is not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
 {¶ 43} Assignment of Error No. 3:
 {¶ 44} "The trial court, in Case No. CR00-05-0732, erred in imposing a prison term running that prison term consecutive to that imposed in Case No. CR03-05-0732 [sic]."
 {¶ 45} In the third assignment of error, appellant argues that running the prison term in case CR00-05-0732 consecutively to the term in case CR03-05-0781 is contrary to relevant sentencing procedure because the trial court failed to state its reasons for making the statutory findings necessary to support a consecutive sentence. For the following reasons, we find this argument is without merit.
 {¶ 46} Pursuant to R.C. 2929.14(E)(4), a court may impose consecutive terms of imprisonment if it makes three findings: First, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(E)(4). Second, the court must find that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the court must also find that one of the additional factors in R.C. 2929.14(E)(4)(a)-(c) applies:
 {¶ 47} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to * * * [R.C.] 2929.16, [R.C.] 2929.17, or [R.C.] 2929.18 * * *, or was under post-release control for a prior offense.
 {¶ 48} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses * * * was so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct.
 {¶ 49} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 50} When imposing consecutive sentences, the trial court must make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph one of the syllabus. R.C. 2929.14(E)(4) does not require the trial court to recite the exact words of the statute to impose consecutive sentences upon an offender. State v. Kelly (2001),145 Ohio App.3d 277, 281. However, the trial court must state sufficient supporting reasons for the imposition of consecutive sentences. R.C. 2929.14(B)(2)(c); State v. Boshko (2000),139 Ohio App.3d 827, 838-839.
 {¶ 51} In case CR03-05-0781, the trial court sentenced appellant to a prison term of one year for DUI as a felony of the third degree. At the subsequent community control violation hearing in case CR00-05-0732, the trial court sentenced appellant to 18 months[7] for felony DUI and ran this term consecutively to the term in case CR03-05-0781.
 {¶ 52} In this case, appellant does not contest that the trial court made the statutory findings necessary to impose a consecutive sentence, but rather asserts the court did not state sufficient reasons supporting those findings. However, the trial court did observe that appellant was on community control for felony DUI when he committed yet another felony DUI offense. As part of his previous community control sanctions, appellant had served terms in the county jail as well as the regional community correctional center. The court noted that appellant's criminal conduct presents one of the highest risks to public safety and characterized appellant as "absolutely a menace to everyone on the road."
 {¶ 53} We find the reasons enumerated by the trial court sufficient to support the imposition of a consecutive prison term. Therefore, the trial court did not err by imposing a consecutive sentence in this matter. Appellant's third assignment of error is overruled.
Judgment affirmed.
Young, P.J., and Valen, J., concur.
[1] We note that there appears to be some discrepancy in the record regarding the length of appellant's prison term in case CR00-05-0732. The transcript of the community control violation hearing shows the judge sentenced appellant to a total of 30 months to be served consecutively to the 12-month term imposed in CR03-05-0781. However, the sentencing entry provides for a consecutive term of 18 months. A court is presumed to speak through its journal entries. Gaskins v. Shiplevy, 76 Ohio St.3d 380, 382,1996-Ohio-387. Therefore, the record as it currently stands establishes the prison term length in case CR00-05-073 to be 18 months to be served consecutively to the term in case CR03-05-0781.
[2] In his brief, appellant repeatedly refers to R.C. 4511.19(D)(2)(b) as the challenged statute. However, there is no such subsection. We presume appellant is instead referring to R.C. 4511.19(D)(4)(b), which pertains to the arguments raised.
[3] As mentioned in the recitation of facts above, appellant first challenged the constitutionality of R.C. 4511.19(D)(4)(b) during closing argument of the motion to suppress. Since the issue was not raised in appellant's written motion to suppress nor addressed during testimony, the state asked that the argument be stricken as not before the court. The judge declined to find the statute unconstitutional "from the seat of my pants" without the issue being adequately briefed. Appellant did not further pursue the issue from there. In its appellate brief, the state has not questioned whether appellant adequately preserved the issue for appeal. The Ohio Supreme Court has held it has discretion to hear issues addressing the constitutionality of a statute even if not first raised at the trial level. In re M.D. (1988), 38 Ohio St.3d 149, 151. Whether this discretion extends to appellate courts is not fully resolved. SeeBarnhardt v. Sonny Emrick Excavating (Jan. 12, 1998), Fayette CA97-03-008. However, based on the record in this case and the lack of any objection, we now consider the issue on its merits.
[4] {¶ a} Evid.R. 702 reads as follows: "A witness may testify as an expert if all of the following apply:
{¶ b} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
{¶ c} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
{¶ d} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
{¶ e} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
{¶ f} "(2) The design of the procedure, test, or experiment reliably implements the theory;
{¶ g} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
[5] We note the Ohio Supreme Court denied a discretionary appeal inPhipps. As the Third District Court of Appeals decided Phipps subsequent to both Nutter and Weiland, we presume the Ohio Supreme Court was well aware of these cases when it denied jurisdiction.
[6] We note that Bresson does dispense with the requirement of expert testimony to establish the scientific reliability of the HGN test.Bresson, 51 Ohio St.3d at 128. Still required is a proper foundation as to the officer's knowledge of the test, his training, the actual technique used, and his ability to interpret the results. Id.
[7] See footnote one above commenting on the discrepancy between the transcript and sentencing entry regarding the length of appellant's sentence in case CR00-05-0732.