OPINION
{¶ 1} Defendant-appellant, Patrick J. McNulty, appeals the Judgment Entry of the Willoughby Municipal Court, in which the trial court found McNulty guilty of Operation of a Vehicle while Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them (OVI), in violation of R.C. 4511.19(A)(1)(a). For the following reasons, we affirm the decision of the trial court. *Page 2 
 {¶ 2} On July 3, 2007, McNulty was pulled over after Officer Louis Formick witnessed McNulty fail to stop at a stop sign, weaving lanes, and recorded him speeding with his radar equipment. As Formick approached the vehicle, he observed McNulty's eyes were bloodshot and detected a strong order of alcoholic beverage, which McNulty attributed to his drunk passenger he recently picked up from a bar. Formick asked McNulty to exit the vehicle in order to perform sobriety testing. Formick reported McNulty looked confused as he attempted to turn off and exit his vehicle. Formick noted McNulty was wobbling as he exited his vehicle, his speech was slurred, and he still emitted a strong odor of alcoholic beverage. Formick requested McNulty remove his glasses so Formick could perform the horizontal gaze nystagmus (HGN) test. McNulty refused and Formick performed the test with the glasses in place. Following the completion of the test, McNulty refused to perform any additional field sobriety tests or breathalyzer test. McNulty was subsequently arrested for OVI.
 {¶ 3} McNulty entered a not guilty plea and filed a Motion to Suppress, maintaining all the evidence from his arrest should be suppressed. A suppression hearing was held and the court later denied McNulty's motion finding that "at the moment of arrest, the police had sufficient information derived from a reasonable trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was speeding." The court further reasoned that the observation of slurred speech, bloodshot and glassy eyes, and the strong odor of alcohol "coupled with all the facts observed to that time justified further detention for field testing." Finally, the court concluded that probable cause existed for the arrest of McNulty for the charged offenses. *Page 3 
 {¶ 4} A trial was then held and the jury found McNulty guilty of OVI. A bench trial was later conducted for the other traffic violations arising out of the stop, Speeding and Failure to Stop at the Stop Sign, in violation of Eastlake Codified Ordinances 333.01(A)(2) and 331.19(A), respectively. McNulty was found guilty of both offenses and fined $100.00 for 333.01(A)(2) and $25.00 for 331.19(A), plus costs.
 {¶ 5} On May 7, 2008, the court sentenced McNulty, for his OVI conviction, to 180 days in jail, 132 suspended, with 3 days to be served and 45 days deferred for 60 days, license suspension for 365 days with credit from July, 3, 2007, probation for one year, drug and alcohol counseling, and a $450 fine.
 {¶ 6} McNulty timely appeals and raises the following assignments of error:
 {¶ 7} "[1.] The trial court erred by denying Defendant-appellant's Motion to Suppress in violation of his due process rights as guaranteed by Section 10, Article 1 of the Ohio Constitution and the Fifth andFourteenth Amendments to the United States Constitution."
 {¶ 8} "[2.] Misconduct by the prosecutor violated Defendant-appellant's right to a fair trial guaranteed by the due process provisions of Article I, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendment to the United States Constitution."
 {¶ 9} "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses."State v. Ferry, 11th Dist. No. 2007-L-217, 2008-Ohio-2616, at ¶ 11
(citations omitted). "The trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence."State v. Mayl, *Page 4 106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." Ferry, 2008-Ohio-2616, at ¶ 11 (citations omitted);Mayl, 2005-Ohio-2304, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 10} In his first assignment of error, McNulty maintains that the police officers lacked reasonable suspicion to stop and detain him, specifically he argues that the "totality of the facts and circumstances did not lead a reasonable person to believe he operated his vehicle while under the influence of alcohol."
 {¶ 11} A police officer may stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts that criminal behavior has occurred or is imminent. Terry v. Ohio (1968),392 U.S. 1, 21. Moreover, detention of a motorist is reasonable when there exists probable cause to believe a crime, including a traffic violation, has been committed. Whren v. United States (1996), 517 U.S. 806, 810.
 {¶ 12} At the hearing on the Motion to Suppress, Officer Formick testified that he observed McNulty weaving, utilized his radar unit and clocked McNulty driving from speeds of 47-55 miles per hour, in a 25 miles per hour zone, and observed him fail to stop at a stop sign. Further, he testified that he witnessed McNulty "lose control of the vehicle for a moment" and thought McNulty "was going to actually roll [his vehicle]."
 {¶ 13} Officer Formick's stop of McNulty was valid. "It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law."State v. Boczar, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, at ¶ 11, citing Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12, 1996-Ohio-431. *Page 5 
Moreover, this court has repeatedly held that when a police officer witnesses a minor traffic violation, he or she is warranted in making a stop to issue a citation. Waite Hill v. Popovich, 11th Dist. No. 2001-L-227, 2003-Ohio-1587, at ¶ 14; State v. Brooks, 11th Dist. No. 2005-L-200, 2007-Ohio-344, at ¶ 32. See, also, State v. Carleton, 11th Dist. No. 97-G-2112, 1998 Ohio App. LEXIS 6163, at *10 ("[W]hen a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation."); State v. Yemma, 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at *6-*7 ("[T]his court has repeatedly held that a minor violation of a traffic regulation, * * *, that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation.").
 {¶ 14} As Formick approached McNulty's car, Formick testified that he "immediately smelled a strong odor of alcoholic beverage coming from the vehicle" and noticed McNulty's eyes were bloodshot and glassy, and McNulty's speech appeared slurred. Formick further testified that McNulty appeared confused in his attempt to follow Formick's instructions to turn off the car.
 {¶ 15} "Probable cause is not needed before an officer conducts field sobriety tests. Reasonable suspicion of criminal activity is all that is required to support further investigation." Columbus v. Anderson (1991),74 Ohio App.3d 768, 770, citing State v. Bobo (1988), 37 Ohio St.3d 177,178; State v. Penix, 11th Dist. No. 2007-P-0086, 2008-Ohio-4050, at ¶ 20 (reasonable suspicion was necessary to detain appellant further after the initial stop to conduct field sobriety tests). In the present case, the officer's conduct was proper. The speed and weaving of McNulty's vehicle, the strong odor of alcoholic beverage, and McNulty's glassy and bloodshot eyes, slurred speech, and confusion *Page 6 
provided sufficient grounds for the officer to have a reasonable suspicion which warranted further investigation. See State v.Mapes, 6th Dist. No. F-04-031, 2005-Ohio-3359, at ¶ 42 (finding reasonable suspicion to conduct sobriety tests when the officer "noticed an odor of alcohol in the vehicle as well as appellant's glassy and bloodshot eyes * * * [and] appellant's speech was `somewhat slurred'").
 {¶ 16} After McNulty exited his vehicle, Formick noted that his balance was poor and wobbly as he walked; also that McNulty's responses to his questions were slurred. McNulty refused to participate in the "Walk and Turn" and "One Leg Stand" tests. Further, he refused to remove his glasses during the administration of the HGN test. McNulty maintains that "since the tests were not administered in strict compliance with the regulations, the results of those tests should have been suppressed."[1] However, the court noted that it "did not consider that information in the overall probable cause determination." Moreover, the court, in consideration of a Motion in Limine filed by McNulty, held that no field sobriety tests were conducted. Additionally, during his trial, Formick attempted to testify concerning his perceived results of the HGN test, which McNulty objected to and was then sustained by the court. An instruction to "disregard the six clue response" was given by the judge. It is presumed the jury will obey the court's instructions.State v. Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168. An officer's general observations of the facts and circumstances of a field sobriety test, even if not done properly are admissible as general evidence of whether a defendant appears intoxicated. See State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, at ¶ 15. *Page 7 
 {¶ 17} McNulty further asserts that the totality of the facts and circumstances did not lead a reasonable person to believe he operated his vehicle while under the influence of alcohol.
 {¶ 18} A reviewing court must examine the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88. "The court reviewing the officer's actions must give due deference to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement."State v. Teter, 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, at *8 (citations omitted).
 {¶ 19} In determining whether the police had probable cause to arrest an individual for OVI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v.Ohio (1964), 379 U.S. 89, 91; State v. Timson (1974), 38 Ohio St.2d 122,127.
 {¶ 20} In State v. Homan (2000), 89 Ohio St.3d 421, 2008-Ohio-212, "the arresting officer, admitted to having not * * * complied with established police procedure when administering to [Homan] the HGN and walk-and-turn tests. [The court] nevertheless agree[d] * * * that the totality of facts and circumstances surrounding [Homan's] arrest support[ed] a finding of probable cause." Id. at 427. The court further held that "probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality *Page 8 
of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded." Id.; Penix, 2008-Ohio-4050, at ¶ 29 ("the totality of the circumstances can support a finding of probable cause to arrest, even where no field sobriety tests were administered"). Consequently, after observing the cause for the initial stop, the observations at the car window, and the observations of McNulty outside the vehicle, there was probable cause to arrest McNulty.
 {¶ 21} McNulty's first assignment of error is without merit.
 {¶ 22} In his second assignment of error, McNulty argues that the prosecutor's "continual misconduct throughout the legal proceedings and his closing argument" substantially violated his right to a fair trial. He maintains that the prosecutor "backdoored evidence during his closing argument which deprived [McNulty] a fair trial and thus, in the interest of justice, a mistrial should have been granted by the trial court." We disagree.
 {¶ 23} The conduct of a prosecutor during trial is not grounds for error unless it deprives a defendant of a fair trial. State v.Maurer (1984), 15 Ohio St.3d 239, 266. The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith, 87 Ohio St.3d 424, 442, 2000-Ohio-450, citingState v. Smith (1984), 14 Ohio St.3d 13, 14. "Factors which should be taken into account when making this determination include: (1) the nature of the closing remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v.Owens, 11th Dist. *Page 9 
No. 89-L-14-047, 1990 Ohio App. LEXIS 4891, at *4 (citation omitted). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168, 183 n. 15.
 {¶ 24} McNulty claims that certain comments made by the prosecutor were beyond the scope of evidence. Specifically, McNulty maintains that during closing arguments the prosecutor violated his rights when the prosecutor stated, "[a]lthough we don't have the videotape, and we don't have the booking photograph, certainly the booking photograph is subject to subpoena and the defendant will provide (inaudible) —" at which point McNulty's counsel objected and the court sustained the objection. Furthermore, McNulty takes issue with the comment "[a]nd taking the test would not have prejudiced him, because that test, that machine that issues the test, the records that are kept on that test, the samples of the test are all maintained. And they are subject to review and inspection, and the possibility of testimony —" at which point McNulty's counsel objected and was again sustained by the court. Finally, McNulty claims the following comment, which he claims went beyond the scope of evidence, by the prosecutor in his closing argument violated his rights: "Officer Formick didn't issue the reckless op because he arrested him of OVI, and gave him that break."
 {¶ 25} A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v.Treesh, 90 Ohio St.3d 460, 464, 2001-Ohio-4. Furthermore, the prosecution is entitled to a certain degree of latitude in summation.State v. Grant, 67 Ohio St.3d 465, 482, 1993-Ohio-171; State v.Liberatore (1982), 69 Ohio St.2d 583, 589. The prosecutor may draw reasonable inferences from the *Page 10 
evidence presented at trial, and may comment on those inferences during closing argument. State v. Smith, 80 Ohio St.3d 89, 111, 1997-Ohio-355. We view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial.
 {¶ 26} The record demonstrates that there was overwhelming evidence supporting McNulty's OVI conviction. Formick detected alcohol on McNulty's breath and observed that his eyes were glassy and bloodshot. McNulty was described as being confused when asked to turn his vehicle off. Furthermore, when the officer attempted to conduct field sobriety tests, he witnessed McNulty was wobbling and slurring his words.
 {¶ 27} Given the strength of the evidence presented, we do not find that the result of the trial would have been any different had these comments not been made. Thus, appellant has failed to show that he was prejudiced by the prosecutor's remarks in closing argument. We therefore find no prosecutorial misconduct and find that the trial court was warranted in refusing to declare a mistrial.
 {¶ 28} McNulty's second assignment of error is without merit.
 {¶ 29} For the foregoing reasons, the Judgment Entry of the Willoughby Municipal Court, finding McNulty guilty of Operation of a Vehicle while Under the Influence of Alcohol, a Drug of Abuse, or a Combination of Them, in violation of R.C. 4511.19(A)(1)(a), is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, P.J., COLLEN MARY O'TOOLE, J., concur.
[1] We note that this court has held that "the governing standard for field sobriety test admissibility is substantial compliance and not strict compliance." See State v. Mapes, 2005-Ohio-3359, at ¶ 44. *Page 1