[Cite as *State v. Jackson*, 2025-Ohio-2622.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellant

    v.

TERRENCE JACKSON

    Appellee

C.A. No.    24CA012175

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    23 CR 109852

DECISION AND JOURNAL ENTRY

Dated: July 28, 2025

HENSAL, Judge.

{¶1} The State of Ohio appeals from the judgment of the Lorain County Court of Common Pleas, granting Terrence Jackson's motion to suppress. This Court affirms.

I.

{¶2} Just before 3:00 a.m., Ohio State Highway Patrol Trooper Michael Wearsch saw a car on the road without headlights. The car was stopped at a red light directly opposite him. The traffic light turned green on Trooper Wearsch's side of the road first, so he was able to drive past the stopped car, make a U-turn, and begin accelerating toward the car before the light turned green on that side of the road. When the light turned green, the stopped car remained stationary for approximately three seconds before moving. The trooper decided to stop the car.

{¶3} Mr. Jackson was the driver and sole occupant of the car Trooper Wearsch stopped. When the trooper signaled for him to stop, Mr. Jackson did so without difficulty. The trooper saw that Mr. Jackson had bloodshot, glassy eyes. He found Mr. Jackson's speech to be "low and

mumbled" and detected an odor of alcohol and burnt marijuana coming from the car. Mr. Jackson denied drinking but admitted that he had smoked earlier that evening.[1] He was unable to produce either a license or state identification card at Trooper Wearsch's request, but he immediately answered each of the trooper's questions and complied with his instructions. Because dispatch informed Trooper Wearsch that Mr. Jackson had an active warrant, he had Mr. Jackson exit his car while he investigated the matter. He handcuffed Mr. Jackson and placed him in the back of his police cruiser. Mr. Jackson had no difficulty exiting his car, standing, or walking to the cruiser.

{¶4} When Trooper Wearsch used his mobile data terminal to research Mr. Jackson's warrant, he discovered that Mr. Jackson had a suspended license. He exited his cruiser and opened its back door to remove Mr. Jackson. At that point, he once again detected the odor of alcohol. Mr. Jackson continued to deny that he had consumed alcohol, and Trooper Wearsch admitted to Mr. Jackson that the odor could have come from someone he had arrested and transported in his cruiser earlier that evening. He attempted to conduct field sobriety testing, but Mr. Jackson refused the tests. Trooper Wearsch then arrested Mr. Jackson.

{¶5} Mr. Jackson was charged with two counts of operating a vehicle under the influence of alcohol or drugs ("OVI"), in violation of Revised Code Sections 4511.19(A)(1)(a) and (A)(2)(a) or (b), respectively, and one count of driving under suspension. Both OVI counts carried a repeat OVI offender specification based on his having received five or more OVIs within twenty years of his charged offenses.

{¶6} Mr. Jackson filed a motion to suppress, and the trial court held a hearing on his motion. Following the hearing, the State filed a brief in opposition. The trial court granted Mr.

---

[1] Trooper Wearsch asked Mr. Jackson whether he had smoked without naming any specific substance.

Jackson's motion, finding that Trooper Wearsch lacked probable cause to detain and arrest him for an OVI. The State immediately appealed the trial court's judgment. It raises one assignment of error for review.

## II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY GRANTING TERRENCE JACKSON'S MOTION TO SUPPRESS EVIDENCE AS THERE WAS PROBABLE CAUSE TO ARREST FOR OVI.

{¶7} In its sole assignment of error, the State argues the trial court erred when it found that Trooper Wearsch lacked probable cause to arrest Mr. Jackson for an OVI. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997). This Court, therefore, grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 2003-Ohio-829, ¶ 12 (9th Dist.).

{¶8} "Before an officer may effectuate a warrantless arrest, he must have probable cause that the suspect is engaging in criminal activity." *State v. Consiglio*, 2021-Ohio-990, ¶ 13 (9th Dist.). "[T]his Court reviews a probable cause determination de novo." *State v. Russo*, 2009-

Ohio-6914, ¶ 6 (9th Dist.), quoting *State v. Sunday*, 2006-Ohio-2984, ¶ 28 (9th Dist.). "The legal standard for probable cause to arrest for OVI is whether 'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *State v. Krzemieniewski*, 2016-Ohio-4991, ¶ 11 (9th Dist.), quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds*. While "[t]he amount of evidence necessary for probable cause . . . is less evidence than would be necessary to support a conviction[,]" probable cause is "a stricter standard than reasonable and articulable suspicion." *State v. McGinty*, 2009-Ohio-994, ¶ 11 (9th Dist.); *State v. Mays*, 2008-Ohio-4539, ¶ 23.

{¶9} Initially, we note that the State has only asked us to determine whether Trooper Wearsch had probable cause to detain and arrest Mr. Jackson for an OVI. The State never argued that the trooper had probable cause (1) to detain Mr. Jackson due to his active warrant(s), and (2) to arrest him once the trooper discovered he was driving under suspension. This Court, therefore, takes no position on whether independent grounds for Mr. Jackson's detention and arrest existed. We confine our review to the limited argument the State made in the lower court and maintains on appeal.

{¶10} For ease of review, we begin by outlining the evidence presented at the suppression hearing. Trooper Wearsch testified that he was traveling westbound on State Route 611 when he spotted a car on the eastbound side of the road. The car was stopped at a red light. It was dark outside at nearly 3:00 a.m., but the car did not have its headlights on. Trooper Wearsch drove past the car, made a U-turn, and drove back towards the car as its driver waited for the light to turn green. It was the trooper's impression that the driver had a delayed response when the light turned

green. Nevertheless, he admitted that the delay only amounted to about three seconds. Trooper Wearsch did not testify that he observed any erratic driving, speeding, or lanes violations.

{¶11} Trooper Wearsch identified Mr. Jackson as the driver of the car. He testified that Mr. Jackson had bloodshot, glassy eyes and his speech "was low and mumbled." He testified that he asked Mr. Jackson for his license, but Mr. Jackson said he did not have one. He testified that he then asked Mr. Jackson if he had a state identification card, and Mr. Jackson spent between 20 to 30 seconds searching around the car before giving up. Trooper Wearsch testified that bloodshot eyes, mumbled speech patterns, and difficulty finding identification cards can all be indicators of drug or alcohol impairment. Further, he testified that he detected both an odor of alcohol and an odor of burnt marijuana coming from the car. When the trooper asked Mr. Jackson if he had been drinking or smoking, Mr. Jackson admitted that he had smoked. He indicated that he had done so a few hours before the stop. The trooper did not ask Mr. Jackson what substance he had smoked.

{¶12} Trooper Wearsch testified that he removed Mr. Jackson from the car, searched him, and placed him in the back of the police cruiser. Mr. Jackson remained inside the cruiser while Trooper Wearsch used his mobile data terminal. When the trooper finished, he exited his cruiser and opened its back door to get Mr. Jackson. He testified that, when he opened the door, he noticed an odor of alcohol. Trooper Wearsch then attempted to conduct field sobriety testing, but Mr. Jackson refused. At that point, he arrested Mr. Jackson.

{¶13} On cross-examination, Trooper Wearsch conceded that smoking can cause bloodshot, glassy eyes. He admitted that he did not notice Mr. Jackson having dilated pupils, which could have been a sign that he was under the influence of marijuana. Trooper Wearsch agreed that Mr. Jackson immediately answered questions and did not appear to have any problems maneuvering his car, standing, or walking to the police cruiser. When defense counsel asked

whether Mr. Jackson's "mental processes were intact as a sober person's would be," the trooper responded affirmatively. He also agreed that Mr. Jackson's ability to process information appeared to be "lightning quick . . . ." Trooper Wearsch admitted telling Mr. Jackson that the odor of alcohol he noticed in the back of his police cruiser "may have been [from] the last person that [he] arrested because they were very high[.]"

{¶14} The trial court found that Mr. Jackson immediately pulled over when Trooper Wearsch stopped him for driving without headlights. The court found that Mr. Jackson operated his vehicle "as a sober person would" because he stopped and accelerated appropriately at a traffic light on the road, parked his car without difficulty, and "exhibited divided attention tasks by recognizing he was being pulled over while simultaneously doing so . . . ." The court found that Mr. Jakson had no problem standing or walking, immediately answered Trooper Wearsch's questions, and promptly complied with his orders. Further, it found that he did not have dilated pupils, his mental processes were "lightning quick", and Trooper Wearsch could not say whether he had consumed any alcohol or had recently smoked marijuana. The court concluded that Mr. Jackson's appearance, his physical condition, and his ability to operate his car mitigated against a finding that he was under the influence of alcohol or drugs. It concluded that Trooper Wearsch lacked probable cause to arrest him for an OVI.

{¶15} The State has not challenged any of the trial court's factual findings as lacking in competent, credible evidence. Instead, it argues that the trial court erred when it granted Mr. Jackson's motion to suppress because, under the totality of the circumstances, Trooper Wearsch had probable cause to arrest him for an OVI. It points to Mr. Jackson's failure to use his headlights, his slow response to the change in the traffic light, the appearance of his eyes, the distortion of his

speech, the extended time he spent searching for an identification card, and the odor of alcohol and burnt marijuana that Trooper Wearsch detected during the traffic stop.

{¶16} Upon review, we cannot conclude the trial court erred when it found that Trooper Wearsch lacked probable cause to arrest Mr. Jackson for an OVI. Although Mr. Jackson was operating a car without headlights, there was no evidence that he drove erratically, exceeded the speed limit, or committed any moving violations. *Compare Krzemieniewski*, 2016-Ohio-4991 at ¶ 19 (9th Dist.) (probable cause existed where defendant committed two marked-lanes violations, had bloodshot and glossy eyes, admitted having smoked marijuana recently, and had raw marijuana in his car). Trooper Wearsch admitted that Mr. Jackson's delayed response at the traffic light amounted to no more than three seconds. He also admitted that Mr. Jackson responded to his command to stop, pulled over without difficulty, and immediately answered each question he posed. Trooper Wearsch never described the intensity of the odor of alcohol he detected when he encountered Mr. Jackson, and he admitted that the back of his police cruiser might have smelled of alcohol due to its prior occupant. The trooper described Mr. Jackson's speech as "low and mumbled" but gave no indication that it was slurred. Although he described Mr. Jackson as having bloodshot, glossy eyes, he conceded that those symptoms could be caused by smoke. Trooper Wearsch readily admitted that Mr. Jackson's mental processes were "lightning quick" and "intact as a sober person's would be . . . ." Moreover, he never observed Mr. Jackson sway, stumble, or otherwise have difficulty when exiting his car and walking to the police cruiser. Although Mr. Jackson spent time looking for an identification card, the trooper admitted that he asked Mr. Jackson for some other type of state identification card after he asked him for his license. Mr. Jackson's response to the license question was immediate. He never claimed to have one. The trooper conceded that Mr. Jackson's search was related to the trooper's follow-up question about

a different form of identification. Thus, a reasonable person could conclude that Mr. Jackson spent time searching for an alternative form of identification that would act as an adequate substitute for his license.

{¶17} As noted, the probable cause standard requires more than just reasonable, articulable suspicion. *See Mays*, 2008-Ohio-4539, at ¶ 23. The record reflects that "there was no indication of erratic driving or behavior, and there was little indication of physical impairment that would contribute to a conclusion that there was a reasonable probability that [Mr. Jackson] was impaired." *State v. Hopp*, 2016-Ohio-8027, ¶ 11 (9th Dist.). Accordingly, we cannot conclude the trial court erred when it found that Trooper Wearsch lacked probable cause to arrest Mr. Jackson for an OVI. The State's sole assignment of error is overruled.

### III.

{¶18} The State's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ANTHONY CILLO, Prosecuting Attorney, and MARK ANTHONY KOZA, Assistant Prosecuting Attorney, for Appellant.

MICHAEL E. STEPANIK, Attorney at Law, for Appellee.