[Cite as *State v. Miller*, 2025-Ohio-4328.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
### PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellant,

- vs -

JACOB A. MILLER,

        Defendant-Appellee.

CASE NO. 2025-P-0022

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 00601

---

## OPINION AND JUDGMENT ENTRY

Decided: September 15, 2025
Judgment: Affirmed

---

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Linda M. Malek* and *Chris Vogt*, Malek Law Firm, L.L.C., 2347 State Road, Cuyahoga Falls, OH 44223, and *Joel A. Holt*, Maguire Schneckenburger Legal Group, 190 East Avenue, Tallmadge, OH 44278 (For Defendant-Appellee).

SCOTT LYNCH, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Court of Common Pleas, granting defendant-appellee, Jacob Miller's, motion to suppress. For the following reasons, we affirm the decision of the court below.

{¶2} On July 19, 2024, the Portage County Grand Jury indicted Miller for Improperly Handling Firearms in a Motor Vehicle, a felony of the fifth degree, in violation of R.C. 2923.16; and two counts of Operating a Vehicle While Intoxicated, misdemeanors of the first degree, in violation of R.C. 4511.19(A)(1)(a) and (d).

{¶3}     Miller filed a motion to suppress on October 28, 2024.  He argued that there was a lack of reasonable suspicion to conduct field sobriety testing and a lack of probable cause to arrest him for OVI.  A suppression hearing was held on February 12, 2025, at which the following testimony was presented:

{¶4}     Trooper Drake Ray of the Ravenna Highway Patrol Post testified that, when patrolling in Rootstown around midnight on July 4, 2024, he clocked Miller travelling 59 m.p.h. in a 45 m.p.h. zone.  He subsequently observed the vehicle travel over double yellow lines.  He pulled over Miller's vehicle and noticed a strong odor of alcohol coming from his person.  Ray observed a wristband on Miller's wrist and a stamp on his hand which indicated he had been at a bar a few miles away, the Dusty Armadillo.  As Ray spoke with Miller, he "noticed his speech was slurred and his eyes were bloodshot, red and glassy."  Miller denied having alcohol and stated that he had picked up his friend.

{¶5}     Ray asked Miller to exit the car and perform field sobriety tests.  He again smelled the odor of alcohol when Miller exited.  Ray had Miller stand with his back facing the passenger's side of his cruiser, which had its flashing blue lights on.  Ray performed a horizontal gaze nystagmus (HGN) test and observed six out of six clues of intoxication. On the walk and turn test, Ray observed four of eight clues of intoxication: Miller moved his foot before starting, took the incorrect number of steps, turned incorrectly, and raised his hands more than six inches for balance.  Miller declined to perform the one leg stand due to an injury and refused a portable breath test.

{¶6}     On March 21, 2025, the trial court issued an order granting Miller's motion to suppress, concluding that "Trooper Ray had no reasonable suspicion to require Defendant to submit to field sobriety testing and lacked the probable cause to effectuate

a warrantless arrest." The trial court found that "at no time during the traffic stop did Trooper Ray indicate that Defendant committed a lane violation;" Miller denied consuming alcohol and was "cooperative," "attentive," and "answered all questions posed to him articulately"; "no bloodshot eyes are visible in the video"; and the video "shows that Defendant has a slight lisp and/or speech impediment." As to the HGN test, the court found that the video "shows strobing lights on Defendant's face" and Trooper Ray's failure to deactivate his overhead, flashing lights "may have skewed the results due to the strobe-light effect on the eyes." As to the walk and turn test, the court found: "Trooper Ray should have given Defendant the opportunity to remove" his cowboy boots; Miller did not lose his balance during the test; he took the correct number of steps and turned correctly; and he raised his arms "less than a few inches for balance."

{¶7} The State timely appeals and raises the following assignments of error:

{¶8} "[1.] The Portage County Common Pleas Court erred in determining that a Trooper's observation of speed, a marked lanes violation, in proximity to a bar, odor of alcoholic beverage, a stamp and wristband from a bar, the time of day and the day of the week, bloodshot, red, glassy eyes, and slurred speech did not amount to reasonable suspicion to request a driver exit his vehicle to perform field sobriety tests."

{¶9} "[2.] The Portage County Common Pleas Court erred in determining that the Trooper did not have probable cause to arrest for an OVI, when the driver performed poorly on the field sobriety tests and exhibited multiple Evans factors."

**Review of Motions to Suppress**

{¶10} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier

of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

**Probable Cause to Arrest Miller for OVI**

{¶11} We will address the assignments of error out of order for ease of discussion. In its second assignment of error, the State argues that the trial court erred in finding that there was no probable cause to arrest Miller given the circumstances observed by Trooper Ray at the time of the stop as well as the six out of six clues present in the HGN test and four out of eight clues in the walk and turn test.

{¶12} "'The Fourth Amendment of the United States Constitution, as well as Article One, Section Fourteen, of the Ohio Constitution, guarantee '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *State v. Wojtaszek*, 2003-Ohio-2105, ¶ 15 (11th Dist.). To arrest a defendant, the officer "must have probable cause to believe that the individual has committed a crime." (Citation omitted.) *Kent v. Hughes*, 2025-Ohio-1499, ¶ 18 (11th Dist.). "'In determining whether the police had probable cause to arrest an individual for OVI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the

influence.'" *State v. Hale*, 2015-Ohio-5533, ¶ 16 (11th Dist.), quoting *State v. McNulty*, 2009-Ohio-1830, ¶ 19 (11th Dist.). "'[P]robable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's . . . performance on one or more [field sobriety] tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered.'" *Id.*

{¶13} In its probable cause determination, the trial court pointed to multiple deficiencies in the field sobriety tests. First, it expressed concerns with the HGN testing, concluding that Trooper Ray's failure to deactivate his overhead cruiser lights "may have skewed the results due to the strobe-light effect on the eyes" and the "video shows the strobing lights on Defendant's face." Second, the court found that since Miller was wearing cowboy boots, which have a heel, "Trooper Ray should have given Defendant the opportunity to remove said footwear." Third, the trial court expressed concerns with Trooper Ray's conclusion that there were four of eight clues present on the walk and turn test and determined that he was wrong in finding that Miller took the correct number of steps, turned correctly, and raised his arms less than a few inches for balance, contrary to Trooper Ray's testimony.

{¶14} These conclusions indicate concerns with Trooper Ray's credibility based on the trial court's observations of the video of the stop and his testimony. It expressly rejected testimony given by Trooper Ray relating to the impact of the lights on the HGN test and the clues that were shown in the walk and turn test. The trial court, as the finder of fact, reviewed the video of the stop and determined that, contrary to Trooper Ray's testimony, there were defects in the manner in which the tests were performed and evaluated. "Our role in reviewing a trial court's ruling on a motion to suppress is not to

Case No. 2025-P-0022

reevaluate the evidence or the credibility of the witnesses." *State v. Russo*, 2020-Ohio-3236, ¶ 35 (11th Dist.). We again emphasize that, in the case of a motion to suppress, since the trial court is "in the best position to resolve factual questions" and issues of credibility, "we defer to the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside*, 2003-Ohio-5372, at ¶ 8; *State v. Ferrell*, 2017-Ohio-9341, ¶ 9 (11th Dist.).

{¶15} We defer to the foregoing findings of fact by the trial court since they are not unsupported by competent, credible evidence. The video demonstrates that Trooper Ray left the blue flashing lights on the top of his vehicle on while the tests were performed and that Miller had his back facing the passenger side of Ray's vehicle while performing the HGN tests. The blue light shined on the back of his head and one side of his face. Defense counsel questioned whether, because of this fact, "optokinetic nystagmus" may have occurred. According to evidence presented from the National Highway Traffic Safety Administration (NHTSA) manual, a national manual that covers standardized field sobriety tests, optokinetic nystagmus can occur when the eyes fixate on objects such as rotating or strobe lights. It has been observed that the NHTSA contains a mandate to "always face a suspect away from rotating lights [and] strobe lights," which instruction has the "apparent purpose" to avoid optokinetic nystagmus. *State v. Strich*, 2005-Ohio-1376, ¶ 23 (2d Dist.). *See State v. Kraus*, 2008-Ohio-3965, ¶ 21 (1st Dist.) (upholding denial of request to suppress the results of an HGN test where there was substantial compliance with NHTSA regulations such that the defendant's performance was not affected by the lights). Here, rather than facing directly away from the lights, Miller was facing only 90 degrees away from the lights. As the court noted, the lights could be observed on the

Case No. 2025-P-0022

side of his face, leading to its conclusion that they may have affected the tests. We defer to that conclusion and, thus, a determination that the HGN test results could not support a probable cause finding.

{¶16} As to the walk and turn test, the court disagreed with several of Trooper Ray's conclusions. Trooper Ray indicated that Miller raised his arms six inches, but the court found it was only a few inches. The video shows minimal arm movement and we do not find there was a lack of credible evidence to substantiate the court's finding. In regard to the number of steps, Trooper Ray indicated eight steps were taken on the line since Miller counted his first step without lifting his leading foot. The video shows the initial step made with his leading foot but also an additional step made before the turn. We defer to the court's finding on this issue. Finally, as to the turn, there was a step to the side made by Miller but he also used the correct foot to complete the turn. It is evident that the trial court, in its role as fact finder, found that Trooper Ray's testimony on these issues was either inaccurate or lacked credibility and provided a basis for discounting the clues found on the walk and turn test. Given the trial court's findings and the deference to be accorded to these findings, we accept the conclusion that the results of the field sobriety tests lacked value and did not provide probable cause.

{¶17} We observe that probable cause to arrest for an OVI can exist even in the absence of field sobriety tests or where the tests' results have been excluded. *State v. Wojewodka*, 2010-Ohio-973, ¶ 19 (11th Dist.). For example, courts have considered the following in a probable cause determination for an OVI arrest: a suspect's eyes were bloodshot and watery; there was a strong odor of an alcoholic beverage; slow or slurred speech; the admission of consuming alcohol; time of day; admission of being at a bar;

Case No. 2025-P-0022

wobbling when exiting the vehicle; and manner of driving (such as speeding or weaving). *Id.* at ¶ 20; *McNulty*, 2009-Ohio-1830, at ¶ 2 (11th Dist.); *State v. Penix*, 2008-Ohio-4050, ¶ 30 (11th Dist.). However, an examination of the other observations made by Trooper Ray also do not provide probable cause.

{¶18} Trooper Ray testified that Miller traveled over a double yellow line when entering the turn lane, which is shown in the dash camera video. The court correctly observed that Trooper Ray indicated he had not included this fact in the police report and found that Trooper Ray did not indicate a lane violation to Miller during the traffic stop. It appears the trial court questioned whether Trooper Ray viewed this violation at the time of the stop/arrest. Based on this finding, we will not consider the marked lane violation. *See State v. Brickman*, 2001 WL 635954, *3 (11th Dist. June 8, 2001) (officer's testimony regarding the existence of facts was impeached by his failure to include such facts in the police report).

{¶19} The trial court also concluded that "the video shows that Defendant has a slight lisp and/or speech impediment," i.e., that the speech issue was not slurred speech. The body camera video does demonstrate some issue with Miller's speech. We will defer to the trial court's finding and will not consider that Miller had slurred speech.

{¶20} Finally, the trial court found that "no bloodshot eyes are visible in the video." We note that Trooper Ray testified that his "eyes were better than the video" at observing this detail. Nonetheless, again considering our deferential standard, we will accept this finding by the trial court. Given all of the facts, including the failure to place certain information in the police report, the court was in the best position to evaluate the credibility of all of the testimony and observations.

Case No. 2025-P-0022

{¶21} Excluding the foregoing, the following facts exist to support probable cause: time of the stop (after midnight); speeding; the strong odor of alcohol; and glassy eyes. Factors to the contrary include Miller's cooperative attitude; denial of alcohol consumption; lack of bloodshot eyes or slurred speech; and lack of other behavior demonstrating intoxication. We also observe, regarding the proximity to a local bar, as well as the stamp and bracelet from that bar, Miller stated that he had gone to the bar to pick up a friend, who was in the passenger seat at the time of the stop. *See State v. Swartz*, 2009-Ohio-902, ¶ 14-15 (2d Dist.) (considering in evaluation of factors demonstrating a lack of intoxication that the odor of alcohol could be attributed to the fact that the driver asserted he was driving his intoxicated friends home). Apart from the odor of alcohol, there are few facts that directly demonstrate alcohol consumption in contrast to merely driving at night to pick up a friend from a bar.

{¶22} Generally, those cases finding probable cause without field sobriety tests have required something more than what is present here. *See State v. Homan*, 2000-Ohio-212, ¶ 22 (probable cause existed where appellee's eyes were "red and glassy," her breath smelled of alcohol, and she admitted she had been consuming alcoholic beverages); *McNulty*, 2009-Ohio-1830, at ¶ 2, 20 (11th Dist.) (defendant had strong odor of alcohol, bloodshot eyes, slurred speech; exhibited confusion; and was wobbling as he exited his vehicle). *Compare State v. Jackson*, 2025-Ohio-2622, ¶ 16 (9th Dist.) (there was a lack of probable cause where the defendant was driving a car with no headlights, had "low and mumbled speech," and had bloodshot and glassy eyes but did not have difficulty exiting his car or answering questions).

{¶23} Further, we observe that, even under the lesser standard of reasonable

Case No. 2025-P-0022

suspicion to conduct sobriety tests, courts have found there was not enough evidence to proceed in similar situations. *See State v. Reynolds*, 2023-Ohio-2030, ¶ 41 (11th Dist.) (officer did not have reasonable suspicion to conduct sobriety tests where there was an odor of alcohol and red, glassy eyes late at night because there was a lack of other indicia like erratic driving, admission of drinking, stumbling, falling, or fumbling for paperwork) (citation omitted); *State v. Colby*, 2021-Ohio-4405, ¶ 20 (6th Dist.) (finding no reasonable suspicion where "there was no admission of drinking, no allegation of slurred speech, no allegation of rambling speech, . . . no observation of drugs or alcohol in the vehicle [and] [n]either was there any allegation that appellant was uncooperative or belligerent, or any report . . . alleging impaired driving").

{¶24} The second assignment of error is without merit.

**Reasonable Suspicion to Perform Sobriety Tests**

{¶25} In its first assignment of error, the State argues that there was reasonable suspicion to conduct the field sobriety tests given the trooper's testimony about traffic violations, the odor of an alcoholic beverage, indications Miller came from a bar, the time of day, and Miller's eyes and speech. "'[A]n officer may not request a motorist to perform field sobriety tests unless the request is . . . justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated.'" *State v. Lyndon*, 2021-Ohio-1370, ¶ 10 (11th Dist.), citing *Russo*, 2020-Ohio-3236, at ¶ 29 (11th Dist.).

{¶26} Since we determine that there was no probable cause to conduct an arrest, we find this assignment of error to be moot. Even presuming that the State is correct in its assertion that there was reasonable suspicion to perform the field sobriety tests, for the reasons above, the tests were found to lack merit, they did not provide probable cause

to conduct an arrest and, thus, the motion to suppress was properly granted. Further, as noted above, those observations made by Trooper Ray prior to conducting the field sobriety tests were not sufficient to provide probable cause for an arrest.

{¶27} The first assignment of error is without merit.

{¶28} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, granting Miller's motion to suppress, is affirmed. Costs to be taxed against appellant.


ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2025-P-0022

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit.  The order of this court is that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0022